947 So.2d 416 (2006)
Robert W. TOLER
v.
Kristy W. TOLER.
2040757.
Court of Civil Appeals of Alabama.
June 30, 2006.
Stephen W. Shaw and Laura S. Gibson of Redden, Mills & Clark, Birmingham, for appellant.
Banks T. Smith of Hall, Smith, Prim & Freeman, P.A., Dothan, for appellee.
PER CURIAM.
Robert W. Toler, the father, appeals from a judgment of the Jefferson Circuit Court dismissing his custody-modification petition.
The father and Kristy W. Toler, the mother, married in 1989. They had one child, a son who was born in June 1991. The parties were divorced pursuant to a 1996 divorce judgment entered by the Jefferson *417 Circuit Court. The judgment awarded the mother primary physical custody of the parties' son, and it awarded the father visitation rights. The father's visitation rights included, in part, visitation on the first and third weekends of each month and 31 days during the summer. The father appealed the custody award to this court. This court affirmed the divorce judgment, without issuing an opinion. Toler v. Toler, 705 So.2d 887 (Ala.Civ.App. 1997) (table).
In September 1998, the father filed a petition to modify custody. In November 1999, the trial court entered a judgment denying the father's request that he be awarded custody of the parties' son. The court did, however, modify the father's summer visitation rights to provide that the 31 days of visitation would be "consecutive days."
In June 2004, the father filed another petition to modify custody, specifically invoking the provisions of the Alabama Parent-Child Relationship Protection Act, Ala. Code 1975, § 30-3-160 et seq. In particular, the father alleged that on May 25, 2004, the mother notified him by letter that she planned to relocate with their son "to Dothan, Alabama in `the middle of July 2004.'" The father objected to the relocation of the son's principal residence. The father alleged that the parties resided in the Altadena area of Birmingham, "approximately 200 yards from each other, allowing the minor child frequent contact with [the father]," and that "[t]he child has spent during his life extensive time with the father, by agreement of the parties, in addition to [the] visitation set forth in the orders of th[e] court." Also, the father alleged that the son had expressed his desire to reside with the father and that "the [mother] ha[d] informed the minor child on occasion that he could remain in the Birmingham area and continue to attend Briarwood Christian School, the school that he ha[d] always attended since the 1st grade." Further, the father alleged:
"12. The Father's mother lives approximately 3 miles from the father and has a good relationship with the minor child and participates in activities with him, including overnight visits and golf and on occasions she picks him up from school.
"13. The minor child attends Valleydale Baptist Church with each parent on their respective weekends, he has good friends at that church and he has been attending church for approximately 2½ years. Previously, the child attended Lakeside Baptist Church with the father on a regular basis since he was 1 year old.
"14. During the past 5 years said child has played football in the Oak Mountain League and now plays for the Briarwood School; he participated in the January-February 2004 Winter practice; and he is scheduled to begin practice for the 8th grade team on July 5th."
The father alleged that a material change of circumstances had occurred "which would justify a change of custody . . . with extended visitation for the [mother]."
In addition to his custody-modification petition, the father also filed a "Motion for Temporary Restraining Order or in the Alternative Pendente Lite Relief." In the motion, the father requested that, pending a hearing on his custody-modification petition, the trial court enter an order enjoining the mother from relocating the son's principal residence or that it award him pendente lite custody.
In response to the father's motion, the mother filed an "Emergency Motion To Allow Change of Residence." In her emergency motion, the mother alleged that she had complied with all of the notice *418 requirements found in Ala.Code 1975, § 30-3-169.1, and that her husband had "received a new employment opportunity which requires a change of residence and would allow the [mother] to stay at home full time with the" parties' son and the mother's and her husband's five-year-old daughter. The mother also alleged that the proposed change of residence was in the son's best interests and that the change of residence "would not result in a detrimental effect on his educational, developmental and emotional needs."
The trial court apparently requested that the parties submit affidavits in support of their respective motions. A few weeks after the mother filed her emergency motion, she filed six affidavits in opposition to the father's motion for a temporary restraining order or for a pendente lite custody award; the affidavits were from herself, her husband, her two sisters, and her parents, who resided in Anniston. In contrast, the father submitted affidavits in support of his motion from himself, the parties' son, and Curt Newell, a psychotherapist and licensed family therapist who had examined the son. The father also submitted an additional affidavit from himself in response to the affidavits submitted by the mother.
In August 2004, the trial court entered an order stating that it had "reviewed the various affidavits" and that it was denying the father's motion for injunctive relief or for pendente lite custody.[1] The order also set the father's custody-modification petition for a hearing to be held in December 2004.
The mother, her husband, and the parties' son relocated to Headland, a city near Dothan.
In November 2004, the father filed an amended petition to modify custody. The amended petition incorporated the allegations in the father's original petition, and it also included allegations that the mother's husband had recently struck the parties' son in the face and bloodied his nose, without any intervention by the mother, and that the mother had restricted the father's telephone contact with their son. The Jefferson County Department of Human Resources ("DHR") investigated the physical-abuse allegation against the mother's husband; DHR confirmed that the incident between the mother's husband and the parties' son had occurred, but it concluded that "[t]here does not appear to be any ongoing safety concerns which would justify the need for protective services. This appears to be an isolated incident between [the son] and [the mother's husband]." The father also alleged that the mother had not enrolled the son in either of the schools that she had disclosed to him in her May 2004 relocation notice.
The December 2004 trial setting was continued. In March 2005, the trial court conducted an ore tenus proceeding on the father's custody-modification petition. At the close of the father's case-in-chief, the mother made an oral "motion for a directed verdict." At the time of the oral motion, the only evidence that the mother had offered was the testimony of her husband, which had been "taken out of turn" by *419 agreement of the parties. After the mother's oral motion, the trial court consulted with the parties' attorneys in chambers and then recessed the proceeding.
In April 2005, the trial court issued a judgment stating that the mother had made an "oral motion to dismiss" at trial and that the motion was "due to be granted. . . . Therefore, it is, ORDERED AND ADJUDGED . . . [t]hat the [father's] Motions and Petitions for Relief demanded therein are due to be Denied." The father filed a postjudgment motion requesting that the trial court alter, amend, or vacate its judgment or that it award him a new trial. The father also requested that the trial court take additional testimony because the mother's husband had allegedly been convicted of criminal trespass after the entry of the judgment. After hearing oral argument on the father's postjudgment motion, the trial court denied the motion.
The father appeals, contending, as he did in his postjudgment motion, that the trial court ignored "the presumption, burden of proof, custody considerations and mandates" of the Parent-Child Relationship Protection Act, that it failed to "take into account all factors" affecting the child as stated in § 30-3-169.3, that the mother failed to meet her burden of proof as to statutory notice as described in § 30-3-165, and that the trial court erred by not awarding the father custody of the child.[2]
Section 30-3-169.4, Ala.Code 1975, provides:
"In proceedings under this article unless there has been a determination that the party objecting to the change of the principal residence of the child has been found to have committed domestic violence or child abuse, there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party."
(Emphasis added.)
Also, § 30-3-169.3, Ala.Code 1975, provides:
"(a) Upon the entry of a temporary order or upon final judgment permitting the change of principal residence of a child, a court may consider a proposed change of principal residence of a child *420 as a factor to support a change of custody of the child. In determining whether a proposed or actual change of principal residence of a minor child should cause a change in custody of that child, a court shall take into account all factors affecting the child, including, but not limited to, the following:
"(1) The nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate with the child and with the non-relocating person, siblings, and other significant persons or institutions in the child's life.
"(2) The age, developmental stage, needs of the child, and the likely impact the change of principal residence of a child will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
"(3) The increase in travel time for the child created by the change in principal residence of the child or a person entitled to custody of or visitation with the child.
"(4) The availability and cost of alternate means of communication between the child and the non-relocating party.
"(5) The feasibility of preserving the relationship between the non-relocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
"(6) The preference of the child, taking into consideration the age and maturity of the child.
"(7) The degree to which a change or proposed change of the principal residence of the child will result in uprooting the child as compared to the degree to which a modification of the custody of the child will result in uprooting the child.
"(8) The extent to which custody and visitation rights have been allowed and exercised.
"(9) Whether there is an established pattern of conduct of the person seeking to change the principal residence of a child, either to promote or thwart the relationship of the child and the non-relocating person.
"(10) Whether the person seeking to change the principal residence of a child, once out of the jurisdiction, is likely to comply with any new visitation arrangement and the disposition of that person to foster a joint parenting arrangement with the non-relocating party.
"(11) Whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the change of principal residence of the child and the child, including, but not limited to, financial or emotional benefit or educational opportunities.
"(12) Whether or not a support system is available in the area of the proposed new residence of the child, especially in the event of an emergency or disability to the person having custody of the child.
"(13) Whether or not the proposed new residence of a child is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system, or which otherwise presents a substantial risk of specific and serious harm to the child.
"(14) The stability of the family unit of the persons entitled to custody of and visitation with a child.
"(15) The reasons of each person for seeking or opposing a change of principal residence of a child.

*421 "(16) Evidence relating to a history of domestic violence or child abuse.
"(17) Any other factor that in the opinion of the court is material to the general issue or otherwise provided by law."
(Emphasis added.) Section 30-3-169.3(c) further requires that
"[t]he court, in approving a change of principal residence of a child, shall order contact between the child and the non-relocating party and telephone access sufficient to assure that the child has frequent, continuing, and meaningful contact with the non-relocating party and shall equitably apportion transportation costs of the child for visitation based upon the facts of the case."
(Emphasis added.)
We have carefully reviewed the record. There is no evidence indicating that the father "committed domestic violence or child abuse"; the only evidence of domestic violence related to the incident between the mother's husband and the parties' son. Thus, as the father correctly notes, there was a rebuttable presumption that a change of the son's principal residence was not in the son's best interests. The mother bore the initial burden of proof as to whether a change of principal residence was in the son's best interests in light of the factors described in § 30-3-169.3(a). Until that burden of proof was met, the burden of proof in the present case did not shift to the father.
After reviewing the evidence presented to the trial court, and considering the factors that the trial court is required to consider under the Parent-Child Relationship Protection Act, we cannot conclude that the mother met her burden of proof based solely on the testimony of her husband and inferences that might be drawn from evidence presented by the father. For example, based on the undisputed evidence presented to the trial court, before the mother moved the son to Headland, the father exercised visitation with the son much more frequently than had been contemplated by the visitation schedule in the divorce judgment, as modified. In fact, it was undisputed that in the summer of 2003 the son spent every day with the father and that at other times, particularly in 2004, the son generally spent at least two afternoons each week with the father, in addition to visitation every other weekend. In contrast, since moving to Headland, the mother had permitted the father to exercise visitation only on the first and third weekends of each month. She had required the father to drive 200 miles to Headland to retrieve their son on Friday afternoon and to return him to Headland on Sunday evening, thus requiring a considerable portion of the father's visitation time to be spent driving. There was also testimony indicating that the mother had restricted the son's telephone access to the father, although the mother's husband denied that the mother had done so. We note that it was undisputed that as recently as April 2004 the mother had restricted the son's visitation with the father as a means of discipline.
Furthermore, based on the evidence presented to the trial court, it appears that before the mother's proposed move to Headland, the present case involved an enviable custody situation for the parties' son; the mother and the father continued to reside within walking distance of each other after their divorce. It is undisputed that before the mother moved to Headland the son had resided in the Altadena area of Birmingham for most of his life. He had resided in the same residence in Altadena since he was six years old and in the same neighborhood since he was three years old. He had also attended the same private school since he was in the first grade. The *422 father participated in school activities with the son, and the father helped the son with school work. The son's daily activities in Altadena included fishing in the lake down the street from his father's home, swimming, playing golf at the golf course down the street from his father's home, playing paintball with his friends in a paintball course he and his friends built near a creek behind the father's home, and playing basketball and football with other children who resided near the father. The son also visited his paternal grandmother, who resided near the father, on an almost weekly basis before the mother's move to Headland.
We also note that the father is self-employed and worked out of his home. He was apparently able to spend a considerable amount of time with his son, despite his work schedule. The mother was employed outside the home when she resided in Altadena; she is apparently a "stay-at-home" mother in Headland. There is little evidence, however, as to the time the mother spent with the son on a daily basis.
As the foregoing evidence demonstrates, by moving to Headland, the mother uprooted the approximately 14-year-old son from his home, his friends, his school, his church, and his other day-to-day activities and contacts. Under the evidence presented, it appears that a change of custody to the father would have left much of the son's day-to-day life intact and would have been less disruptive to the son than leaving custody with the mother. We also note that it is undisputed that in the spring of 2004, before any discussion occurred about moving to Headland, the son expressed his desire to reside with the father, a desire that the son reiterated at trial. "While not dispositive, the preference of a child with regard to its custody is entitled to much weight." See Brown v. Brown, 602 So.2d 429, 431 (Ala.Civ.App. 1992); see also Ex parte Devine, 398 So.2d 686, 697 (Ala.1981) (holding that a trial court must consider the preference of a child of sufficient age and maturity).
We conclude that the trial court erred by dismissing the father's petition. The initial burden of proof in this case was upon the mother; she was required to rebut the presumption that a change of principal residence was not in the son's best interests. By dismissing the father's petition without requiring the mother to meet her burden of proof, the trial court failed to give effect to the presumptions prescribed by our legislature in the Parent-Child Relationship Protection Act. We therefore reverse the trial court's judgment and remand the cause for a new trial.
The father's request for the award of an attorney fee on appeal is denied.
REVERSED AND REMANDED.
MURDOCK and BRYAN, JJ., concur specially.
CRAWLEY, P.J., concurs in the result, with writing, which PITTMAN, J., joins.
PITTMAN, J., concurs in the result, with writing.
THOMPSON, J., concurs in the result only, without writing.
MURDOCK, Judge, concurring specially.
I concur in the main opinion. I write separately to respond to two aspects of Judge Pittman's special writing by which he concurs in the result reached by the main opinion.
First, unlike Judge Pittman, I do not believe Rule 52(c), Ala. R. Civ. P., is applicable. Rule 52(c) allows a trial court to enter a judgment against a party when that party has been fully heard as to an issue, the trial judge finds against the *423 party on that issue, and that party cannot prevail without a ruling favorable to it on that issue. Here, the father was fully heard as to the issue of whether there should be a change of custody if, without such a change, the mother will be allowed to change the child's place of residence. Consistent with my view of the Alabama Parent-Child Relationship Protection Act, Ala.Code 1975, § 30-3-160 et seq. ("the Act"), as discussed hereinafter in this writing, this is not a case in which the father can prevail only if he is successful as to the issue as to which he has been heard. Under that Act, the father also can prevail if the mother is unsuccessful in meeting the initial burden of proof imposed upon her in § 30-3-169.4, Ala.Code 1975, as to whether a relocation of the child would be in the child's best interests.[3]
Second, and more importantly, I disagree with the suggestion in Judge Pittman's writing that, on remand, the trial court is to decide this case based upon the standard enunciated in Ex parte McLendon, 455 So.2d 863 (Ala.1984). This case has given me occasion to reconsider the position indicated by my votes in Clements v. Clements, 906 So.2d 952 (Ala.Civ App. 2005), and T.B. v. C.D.L., 910 So.2d 794 (Ala.Civ.App.2005). I now disagree with the conclusion reached in Clements, and followed in T.B., regarding the continued applicability of the McLendon presumption in cases in which our legislature has said the provisions of the Act are to be applicable.[4]
*424 Ex parte McLendon was decided by our Supreme Court in 1984. The Act was adopted in 2004. As such, the Act reflects a legislative policy choice to supplant the so-called McLendon presumption in specific types of cases.[5]
The legislature expressly states in the Act that the Act "promotes the general philosophy in this state that children need both parents, even after a divorce." See § 30-3-160 (emphasis added). Toward this end, the Act adopts a new presumption and new rules of decision, including those in §§ 30-3-169.3 and 30-3-169.4, obviously intended to discourage unnecessary relocations by custodial parents that would make the maintenance of relationships between a child and both of his or her parents less likely or less fully realized.
In contrast to the view indicated in Clements, I believe there are differences in approach between the McLendon presumption and the presumption and rules of decision specified in the Act for cases in which the primary custodial parent seeks to relocate. Indeed, if the legislature did not intend to alter the presumptions and rules of decision in such cases, I see no reason for it to have adopted the Act. See, e.g., Ex parte Ted's Game Enters., Inc., 893 So.2d 376, 384 (Ala.2004) (the legislature is presumed not to have done a vain and useless thing).
The ultimate objective in any custody case is to determine what custodial placement would be in the "best interests" of the child. It was only toward that end that the McLendon standard was formulated by our Supreme Court as a guide for lower courts. In the search for a child's best interests under the McLendon standard, a relocation of a child by the custodial parent is a factor in whether the McLendon standard is met. Under the Act  specifically § 30-3-169.4  there is now a presumption as to relocation, namely, that it is not in a child's best interests to undergo a relocation under certain circumstances.
Moreover, § 30-3-169.3 enumerates 16 factors that a court is to consider in deciding whether a change of primary physical custody would be in a child's best interests. The relationship of the relocating parent and the child is just part of the first one of those factors. See § 30-3-169.3(a)(1), Ala.Code 1975. The degree of disruption that would be occasioned by the change of custody is also but 1 of the 16 enumerated factors. See 30-3-169.3(a)(7), Ala.Code 1975. Furthermore, unlike the manner in which disruption is addressed in the so-called McLendon standard, the Act now requires the trial court to compare the degree to which a change of the principal residence of the child will result in disruption for the child with the degree to which a modification of the custody of the child will result in disruption for the child. Id.[6]
*425 To be sure, because the ultimate objective under both the McLendon standard and the Act is to determine the child's best interests, and because the factors outlined in the Act should have been addressed in most cases decided under the McLendon standard, one might expect the outcome in many, if not most, cases will be no different under the Act than they would have been under the McLendon standard. To be equally sure, this will not be true in all cases. Obviously, the Act for the first time introduces an express presumption against relocation and imposes upon the custodial parent the burden of rebutting that presumption before the burden of proof then shifts to the noncustodial parent. In this and other respects, the Act clearly represents an effort on the part of our legislature to change the calculus by which courts address the issue of whether a parent who has previously been awarded the primary physical custody of a child should be allowed to maintain that custodial relationship in connection with changing the primary residence of the child.[7]
BRYAN, Judge, concurring specially.
Section 30-3-169.4 of the Alabama Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala.Code 1975, ("the Act"), provides:
"In proceedings under this article . . ., there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party."
(Emphasis added.)
The case now before this court precisely illustrates the purposes behind the requirement in § 30-3-169.4 of the Act, that the relocating parent has the initial burden of proof. The presumption under the Act implies that a child's best interest is served when that child remains in the environment where the child has established significant ties. In the present case, the son has established significant familial, social, and educational ties to the Birmingham area. On remand, the mother has the initial burden of rebutting the presumption that the best interest of the son is served by the son's residing in the Birmingham area.
CRAWLEY, Presiding Judge, concurring in the result.
I concur in the reversal of the judgment in this case. However, in light of Judge Murdock's stated belief that the legislature, by enacting the Alabama Parent-Child Relationship Protection Act, Ala. Code 1975, § 30-3-160 et seq. ("the Act"), intended to "supplant" the long-applied *426 burden on the noncustodial parent seeking a change of custody outlined in Ex parte McLendon, 455 So.2d 863 (Ala.1984), in cases involving the relocation of a custodial parent, I believed it best to express my opinion on this matter as well.
The Act states that its purpose is to "promote[] the general philosophy in this state that children need both parents, even after a divorce. . . ." Ala.Code 1975, § 30-3-160. In general, the Act requires a custodial parent who intends to relocate outside of a span of 60 miles from the noncustodial parent to give notice of the intended relocation so that the noncustodial parent, if so inclined, can challenge the intended relocation. See §§ 30-3-162(b), 30-3-165, & 30-3-169. If a challenge is instituted, the custodial parent must rebut the presumption that the intended relocation is not in the best interests of the child. § 30-3-169.4. If a parent rebuts that presumption and is given the trial court's permission to relocate, the other parent may seek a change of custody. § 30-3-169.3. And that is where the question whether Ex parte McLendon has continued application begins.
The Act itself, in my opinion, indicates that the legislature incorporated, at least in part, the Ex parte McLendon burden and the way that burden has been applied over the years in cases involving a relocation of the custodial parent. Section 30-3-169.3(a) provides:
"Upon the entry of a temporary order or upon a final judgment permitting the change of principal residence of a child, a court may consider a proposed change of principal residence of a child as a factor to support a change of custody of the child. In determining whether a proposed or actual change of principal residence of a minor child should cause a change in custody of that child, a court shall take into account all factors affecting the child, including, but not limited to, the following:
"(1) The nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate with the child and with the non-relocating person, siblings, and other significant persons or institutions in the child's life.
"(2) The age, developmental stage, needs of the child, and the likely impact the change of principal residence of a child will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
"(3) The increase in travel time for the child created by the change in principal residence of the child or a person entitled to custody of or visitation with the child.
"(4) The availability and cost of alternate means of communication between the child and the non-relocating party.
"(5) The feasibility of preserving the relationship between the non-relocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
"(6) The preference of the child, taking into consideration the age and maturity of the child.
"(7) The degree to which a change or proposed change of the principal residence of the child will result in uprooting the child as compared to the degree to which a modification of the custody of the child will result in uprooting the child.

"(8) The extent to which custody and visitation rights have been allowed and exercised.

*427 "(9) Whether there is an established pattern of conduct of the person seeking to change the principal residence of a child, either to promote or thwart the relationship of the child and the non-relocating person.
"(10) Whether the person seeking to change the principal residence of a child, once out of the jurisdiction, is likely to comply with any new visitation arrangement and the disposition of that person to foster a joint parenting arrangement with the non-relocating party.
"(11) Whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the change of principal residence of the child and the child, including, but not limited to, financial or emotional benefit or educational opportunities.
"(12) Whether or not a support system is available in the area of the proposed new residence of the child, especially in the event of an emergency or disability to the person having custody of the child.
"(13) Whether or not the proposed new residence of a child is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system, or which otherwise presents a substantial risk of specific and serious harm to the child.
"(14) The stability of the family unit of the persons entitled to custody of and visitation with a child.
"(15) The reasons of each person for seeking or opposing a change of principal residence of a child.
"(16) Evidence relating to a history of domestic violence or child abuse.
"(17) Any other factor that in the opinion of the court is material to the general issue or otherwise provided by law."
(Emphasis added.)
Generally, cases decided before the adoption of the Act in which the noncustodial parent was seeking a modification of custody and the custodial parent was relocating held that the change of residence of the custodial parent was considered but one factor in determining whether modification was warranted. See, e.g., Ex parte Murphy, 670 So.2d 51, 53 (Ala.1995); Morris v. Padgett, 890 So.2d 157, 159 (Ala.Civ. App.2004); Scacca v. Scacca, 694 So.2d 1, 4 (Ala.Civ.App.1997); Moore v. Moore, 585 So.2d 66, 68 (Ala.Civ.App.1991); and Patchett v. Patchett, 469 So.2d 642, 644 (Ala.Civ.App.1985). The Act, likewise, makes the change of principal residence one of numerous factors for the trial court to consider when determining whether a modification of custody is warranted. § 30-3-169.3(a). Under Ex parte McLendon, the noncustodial parent must prove that a change in custody would materially promote the child's best interests, or, in other words, that the benefits of the change in custody would more than offset the inherent disruption caused by that change. See Ex parte McLendon, 455 So.2d at 866. The Act likewise requires the trial court to consider the impact of a change in custody and to weigh that against the obvious impact of a change of residence. § 30-3-169.3(a)(7). Section 30-3-169.4 shifts the burden back to the noncustodial parent once a custodial parent rebuts the presumption against relocation, so I believe that the noncustodial parent seeking a modification in custody on the basis of an approved relocation has the burden of demonstrating that the child's best interests would be served by a change in custody.
*428 I disagree, therefore, that the Act "supplants" the test outlined in Ex parte McLendon. I believe instead that the Act simply recognizes the long-applied standard that a change in residence is only one factor to be considered in a modification proceeding. The Act, in my opinion, further recognizes that a child facing relocation of his or her principal residence or a modification of custody will undergo change in either instance and instructs the trial court, as one would expect the trial court to have done in any event, to weigh the two impacts against each other. The Act does not, in my opinion, relieve the noncustodial parent from proving that the change of custody he or she seeks on the basis of an approved change in principal residence promotes the child's best interests inasmuch as the benefits of a change in custody would outweigh the disruption caused by that change. The practical effect of the trial court's weighing the disruptive impact caused by either proposed event  the relocation or the change of custody  may well be to make it relatively less difficult to secure a change of custody. However, that effect obtained in many a case of this nature decided before the adoption of the Act.
PITTMAN, J., concurs.
PITTMAN, Judge, concurring in the result.
I was originally prepared to concur in the result in this case with only citations to Rule 52(c), Ala. R. Civ. P., and Clements v. Clements, 906 So.2d 952 (Ala.Civ.App. 2005). Judge Murdock's direct criticism of my reliance upon those authorities, however, arguably calls for a somewhat lengthier response.
Although the dispositive motion filed by the mother in this case was described by her as a motion for a "directed verdict" (which has never been appropriate in nonjury proceedings  see Fitzner Pontiac-Buick-Cadillac, Inc. v. Perkins & Assocs., Inc., 578 So.2d 1061, 1063 n. 1 (Ala.1991)), and was labeled by the trial court as a "motion to dismiss" (which was correct before Rule 52(c), Ala. R. Civ. P., partially supplanted former Rule 41(b), Ala. R. Civ. P.  see Burkes Mech., Inc. v. Fort James-Pennington, Inc., 908 So.2d 905, 910 (Ala. 2004)), the substance of the motion was a request for the entry of a favorable judgment before the close of the presentation of all of the evidence. Thus, I believe that the judgment under review can properly be viewed only as a judgment on partial findings. See Rule 52(c), Ala. R. Civ. P. (governing judgments on partial findings in proceedings in which the trial court is the trier of fact).
Judge Murdock's view that Rule 52(c) is inapplicable is unsound. Rule 52(c) supplies the current procedural mechanism under which a trial court can, in an appropriate case, enter a final judgment on a claim or a defense without hearing all of the evidence, which is precisely what the trial court did in this case. See generally 9A Charles A. Wright et al., Federal Practice & Procedure § 2573.1 (2d ed.1995) (noting that Rule 52(c) authorizes trial courts "to enter judgment at any time a party has been heard fully on an issue" and that the grant of such a motion "is a decision on the merits in favor of the moving party" (footnote omitted)).
Clements, a case decided by this court just over a year ago, discussed the governing burdens of proof in cases involving relocation of the primary custodial parent and noted that under § 30-3-169.3, Ala. Code 1975, a proposed change of principal residence of a child is merely "a factor that a trial court may consider in determining whether to modify custody." 906 So.2d at 958. I adhere to the reasoning set forth in the main opinion and in my special concurrence *429 in that case. However, in my view, although the trial court in this case is free to enter an appropriate judgment on the father's custody petition after having heard all of the evidence, that court should not "short-circuit" the decision process by pretermitting the father's claim without hearing the mother's witnesses or any rebuttal witnesses called by the father because any or all of those witnesses might adduce evidence bearing upon the factors enunciated in Ex parte McLendon, 455 So.2d 863 (Ala.1984), a case governing custody-change determinations by which this court is bound unless it is overruled by the Alabama Supreme Court or unless its rule of decision is expressly abrogated by the legislature.
Based on the foregoing, I concur in the result.
NOTES
[1] The father filed a petition for a writ of mandamus with this court, specifically alleging that the trial court had directed the parties to submit affidavits in support of their respective motions, that it had "failed to conduct a hearing" on his motion, and that the only evidence the trial court had received was in the form of affidavits, which the father alleged contained insufficient evidence to support the trial court's denial of his motion. In part, the father argued that the trial court erred by not conducting a hearing on his motion. See Ala.Code 1975, § 30-3-169.2(b). By order dated August 18, 2004, a majority of this court voted to deny the father's petition for a writ of mandamus.
[2] The mother's appellate brief is permeated with "facts" from the affidavits that she submitted in response to the father's motion for a temporary restraining order or for pendente lite custody. The trial court's consideration of the aforementioned affidavits was in the context of determining whether the mother should be allowed to temporarily relocate the principal residence of the parties' son pending a hearing on the father's objection to the permanent relocation of the son. Cf. Ala. Code 1975, § 30-3-169.2(c) ("If the court has issued a temporary order authorizing a party to change the principal residence of a child before final judgment is issued, the court may not give weight to the temporary change of principal residence as a factor in reaching its final decision."). The affidavits were not offered or received into evidence at trial on the father's custody-modification petition, which concerned, in part, whether the son's permanent relocation was in his best interests.

Based on the mother's citation to matters outside the trial record, the father filed a motion to strike the mother's statement of facts and to strike her appellate brief. We deny the motion to strike, but in doing so we note that this court considers only the evidence properly offered to and received by the trial court. See Wilson v. Crosby Lumber Co., 386 So.2d 1173, 1175 (Ala.Civ.App.1980) ("[M]atters outside the record will not be considered."); see also Queen v. Belcher, 888 So.2d 472, 477 (Ala.2003) (noting that generally affidavits are inadmissible hearsay that cannot be offered as substantive evidence at trial).
[3] The determination as to whether a child's place of residence should be changed (the focus of § 30-3-169.4 and the presumption referenced therein that it is not in a child's best interests to be relocated, a presumption that the relocating parent has the burden of rebutting) and the determination of with whom the child will reside (see § 30-3-169.3, Ala.Code 1975) cannot be separated. Our courts are called upon to make custody decisions. As a general rule, once a court has done that, and barring some emergency implicating the immediate safety of the child, it is the custodial parent's decision as to where the parent and the child will reside, how the child will be cared for, what associations the child will have, etc. In some cases, of course, and as contemplated by the Act, parental decisions as to these issues may be such as to justify a change of custody.

Of necessity, a judicial determination that the presumption against relocation referenced in § 30-3-169.4 has been rebutted and that it is in the best interests of a child to be relocated is a determination that it is in the best interest of the child to relocate with the custodial parent. By the same token, a judicial determination that it is not in the best interests of the child to relocate with the custodial parent is necessarily a determination that the custody of the child cannot remain with that parent. The law cannot workably contemplate that a child will live alone, or a determination as to a child's place of residence based only upon such extrinsic factors as the quality of school systems or cultural life in some new locale. The question of the location of the child's residence (upon which § 30-3-169.4 expressly focuses) and the question of which parent should have custody of the child (upon which § 30-3-169.3 expressly focuses) simply cannot be separated. Therefore, a noncustodial parent necessarily prevails in a case such as this in which the custodial parent has moved or will move but fails to rebut the presumption that a change in the residence of the child will not be in the child's best interests. (In a case in which the custodial parent subsequently chooses to remain in the same locale with the child, the cause for the proposed change of custody would be eliminated and the case would become moot, at least to that extent.)
[4] I also note my disagreement with Judge Pittman's view, expressed in his special writing in Clements, that § 30-3-169.4 applies only to those cases in which there has been no prior custody decision as between two parents. Clements, 906 So.2d at 961. I see no textual basis for so limiting the application of § 30-3-169.4. To do so would defeat a primary objective of the Alabama Parent-Child Relationship Protection Act, namely, preventing a parent who previously has been awarded primary custody of a child from making a significant change in the residence of the child over the objection of the other parent, at least without heightened judicial scrutiny.
[5] In his special writing, Judge Pittman states that this court should continue to follow the McLendon standard until such time as the Supreme Court overrules McLendon or until that "rule of decision is expressly abrogated by the legislature." 947 So.2d at 429 (Pittman, J., concurring in the result) (emphasis added). As explained in the text, I believe the legislature, in adopting the Parent-Child Relationship Protection Act, has in fact done what it needs to do in order to abrogate that rule of decision.
[6] Judge Crawley comments in his separate writing that

"[t]he practical effect of the trial court's weighing the disruptive impact caused by either proposed event  the relocation or the change of custody  may well be to make it relatively less difficult to secure a change of custody. However, that effect obtained in many a case of this nature decided before the adoption of the Act."
947 So.2d at 428 (Crawley, P.J., concurring in the result). Be that as it may, it is true that that effect did not obtain in many a case decided under the so-called McLendon presumption, a fact that I believe the legislature was trying to change with its adoption of the Act.
[7] To be sure as well, there remain, at least for this judge, substantial questions as to whether and how §§ 30-3-169.3 and 30-3-169.4, and the shifting burdens of proof described therein, can be reconciled and applied in relation to one another or in relation to the fundamental rights held by custodial parents. See generally note 3, supra. Unless those or other questions relating to the Act are shown to give rise to constitutional infirmity, however, the rule of decision articulated by the judicial branch in McLendon in an effort to facilitate proper custodial placements of children must now yield to the different rules of decision that have since been articulated by our legislature. No argument that the Act in any way violates the constitution has been presented in the present case.