I concur to affirm the trial court's judgment. The divorce judgment awarded primary physical custody of the parties' two minor children to Eugena D. Philbrook ("the mother") and granted visitation to Robert Y. Wills ("the father"). After the divorce judgment was entered, the mother notified the father that she intended to move the children from Alabama to Alaska. On June 8, 2005, the father, pursuant to the Alabama Parent-Child Relationship Protection Act ("the Act"), codified at § 30-3-160 et seq., Ala. Code 1975, filed with the trial court (1) an objection to the mother's moving the children to Alaska, and (2) a motion seeking a temporary restraining order prohibiting the mother from moving the children to Alaska. However, the trial court neither held a hearing regarding the father's motion seeking a temporary restraining order nor ruled on that motion. The mother moved the children to Alaska on July 15, 2005. Subsequent to the mother's moving the children to Alaska, the father sought primary physical custody of the children.
Approximately six months after the mother had moved the children to Alaska, on January 12, 2006, the trial court held a hearing, and, thereafter, it entered a judgment overruling the father's objection to the mother's moving the children to Alaska and denying the father's claim seeking primary physical custody. The father then appealed to this court.
On appeal, the father argues, among other things, that the trial court erred (1) in failing to hear and rule on his motion seeking a temporary restraining order prohibiting the mother from moving the children to Alaska, and (2) in using the standard enunciated by the supreme court in Ex parteMcLendon, 455 So.2d 863 (Ala. 1984), to determine whether to award the father primary physical custody of the children. I concur to affirm the trial court's judgment as to the first issue — i.e., that the trial court erred in failing to hear and rule on the father's motion seeking a temporary restraining order — because the father did not present that argument to the trial court. See Andrews v. Merritt OilCo., 612 So.2d 409, 410 (Ala. 1992). However, I note that the Act contemplates a timely adjudication of issues regarding the relocation of children, not a tardy one six months after the custodial parent has already unilaterally relocated the children. See § 30-3-169.2(b), Ala. Code 1975 ("The court may grant a temporary order permitting thechange of principal residence of a child and providing for a revised schedule for temporary visitation with a childpending a final hearing. . . ." (emphasis added)); and § 30-3-169, Ala. Code 1975 ("The person entitled to determine the principal residence of a child may change the principal residence of a child after providing notice as provided hereinunless a person entitled to notice files a proceedingseeking a temporary or permanent order to prevent the change ofprincipal residence of a child within 30 days *Page 1016 after receipt of such notice." (emphasis added)).
In my opinion, the father likewise failed to preserve for appellate review his argument that the trial court erred in using the McLendon standard to determine whether to award him primary physical custody of the children. The only argument regarding the McLendon standard the father presented to the trial court was that the McLendon
standard did not apply to the threshold determination whether the mother should be allowed to move the children to Alaska. The father did not argue to the trial court that, if the mother prevailed on that threshold determination, the McLendon
standard should not apply to the subsequent determination whether the father should be awarded primary physical custody. Consequently, I concur to affirm the trial court's judgment as to the second issue — i.e., that the trial court erred in using the McLendon standard to determine whether the father should be awarded primary physical custody — because the father also failed to present that argument to the trial court. See Andrews v. Merritt Oil Co., supra.
However, if the father had properly preserved his argument that the trial court erred in using the McLendon
standard to determine whether to award the father primary physical custody, I would have voted, on the basis of that argument, to reverse the trial court's denial of the father's claim seeking primary physical custody of the children. In the no-opinion affirmance, this court cites Clements v.Clements, 906 So.2d 952 (Ala.Civ.App. 2005), which this court followed in T.B. v. C.D.L., 910 So.2d 794
(Ala.Civ.App. 2005). In Clements, this court held that the McLendon standard applies in cases in which the Act applies. As the rationale for that holding, this court stated that nothing in the Act preempts the application of theMcLendon standard.
I concurred in Clements, and I concurred inT.B., which followed that holding in Clements.
However, after further reflection, I have concluded that the holding in Clements is incorrect. I now agree with the following statements of Judge Murdock in his special writing inToler v. Toler, 947 So.2d 416 (Ala.Civ.App. 2006):
 "Ex parte McLendon was decided by our Supreme Court in 1984. The Act was adopted in 2004. As such, the Act reflects a legislative policy choice to supplant the so-called McLendon presumption in specific types of cases.
 "The legislature expressly states in the Act that the Act `promotes the general philosophy in this state that children need both parents, even after a divorce.' See § 30-3-160 (emphasis added). Toward this end, the Act adopts a new presumption and new rules of decision, including those in §§ 30-3-169.3 and 30-3-169.4, obviously intended to discourage unnecessary relocations by custodial parents that would make the maintenance of relationships between a child and both of his or her parents less likely or less fully realized.
 "In contrast to the view indicated in Clements, I believe there are differences in approach between the McLendon presumption and the presumption and rules of decision specified in the Act for cases in which the primary custodial parent seeks to relocate. Indeed, if the legislature did not intend to alter the presumption and rules of decision in such cases, I see no reason for it to have adopted the Act. See, e.g., Ex parte Ted's Game Enters., 893 So.2d 376, 384 (Ala. 2004) (the legislature is presumed not to have done a vain and useless thing).
 "The ultimate objective in any custody case is to determine what custodial placement would be in the `best interests' of the child. It was only toward *Page 1017 
that end that the McLendon standard was formulated by our Supreme Court as a guide for lower courts. In the search for a child's best interests under the McLendon standard, a relocation of a child by the custodial parent is a factor
in whether the McLendon standard is met. Under the Act — specifically § 30-3-169.4
— there is now a presumption as to relocation, namely, that it is not in a child's best interests to undergo a relocation under certain circumstances.
 "Moreover, § 30-3-169.3 enumerates 16 factors that a court is to consider in deciding whether a change of primary physical custody would be in a child's best interests. The relationship of the relocating parent and the child is just part of the first one of those factors. See
§ 30-3-169.3(a)(1), Ala. Code 1975. The degree of disruption that would be occasioned by the change of custody is also but 1 of the 16 enumerated factors. See [§] 30-3-169.3(a)(7), Ala. Code 1975. Furthermore, unlike the manner in which disruption is addressed in the so-called McLendon standard, the Act now requires the trial court to compare the degree to which a change of the principal residence of the child will result in disruption for the child with the degree to which a modification of the custody of the child will result in disruption for the child. Id.
 "To be sure, because the ultimate objective under both the McLendon standard and the Act is to determine the child's best interests, and because the factors outlined in the Act should have been addressed in most cases decided under the McLendon standard, one might expect the outcome in many, if not most, cases will be no different under the Act than they would have been under the McLendon standard. To be equally sure, this will not be true in all cases. Obviously, the Act for the first time introduces an express presumption against relocation and imposes upon the custodial parent the burden of rebutting that presumption before the burden of proof then shifts to the noncustodial parent. In this and other respects, the Act clearly represents an effort on the part of our legislature to change the calculus by which courts address the issue of whether a parent who has previously been awarded the primary physical custody of a child should be allowed to maintain that custodial relationship in connection with changing the primary residence of the child."
Toler, 947 So.2d at 424-25 (Murdock, J., concurring specially) (footnotes omitted).
The McLendon standard presumes that the child's environment, which includes the child's home, neighborhood, school, and playmates, will remain the same if the child remains in the custody of the party who was previously awarded custody.See McLendon, 455 So.2d at 865 ('"[TheMcLendon standard] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood.'" (quoting Wood v. Wood,333 So.2d 826, 828 (Ala.Civ.App. 1976))). That presumption will often prove to be invalid, however, where the party who was previously awarded custody is attempting to move the child's primary physical residence. For that reason, the Act, which applies when the party who was previously awarded custody is attempting to move the child's principal residence, presumes thatinstability in the child's environment will result if the child remains in the custody of the party who was previously awarded custody. See 30-3-169.4, Ala. Code 1975. Thus, application of the McLendon standard when the party who was previously awarded custody is attempting to move the child's primary residence will result in a *Page 1018 
custody determination that is based upon a presumption that is in diametric opposition to the presumption of the Act.
MOORE, J., concurs.