BRYAN, Judge,
concurring in part and dissenting in part.
I concur in the main opinion insofar as it affirms the calculation of the father’s child-support obligation. However, I respectfully dissent from the conclusion reached by a majority of this court that Sarah J. Knight (“the mother”) overcame the presumption found in § 30-3-169.4, Ala.Code 1975, so as to shift the burden of proof to Kevin J. Knight (“the father”). Because I do not agree that the principal residence of the child should have been relocated, I do not believe that the factors set forth in § 30-3-169.3 should have been considered by the trial court. Thus, I would remand the cause to the trial court for consideration of the father’s counterclaim for custody of the child in light of the fact that the child’s principal residence would not be relocated. Because the majority also holds that the trial court’s failure to conduct a hearing on the father’s postjudgment motion was harmless error, citing Kitchens v. Maye, 623 So.2d 1082, 1089 (Ala.1993), and Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989), I must dissent from that conclusion as well.
As detailed in the main opinion, this case involves the proposed relocation of the principal residence of a child. The mother and the father were divorced by the Laud-erdale Circuit Court on August 29, 2008. Pursuant to an agreement of the parties, the trial court awarded the parties joint legal and physical custody of the parties’ minor child, who was born in October 2006. The parties agreed to a custody schedule according to which, in an 11-day cycle, the mother would exercise physical custody of the child for 7 days and the father would exercise physical custody of the child for 4 days.
Only five months after the joint-custody agreement of the parties was incorporated into the divorce judgment, the mother initiated an action to modify custody of the child and to modify child support. The mother also requested permission to relocate with the child to Santa Ynez, California. The father filed an answer in which he objected to the child’s proposed change of residence, and he filed counterclaims for custody of the child and an award of child support.
The evidence revealed that both parties were good parents and that neither party had any complaints about the other party’s ability to parent the child. The mother and the father are originally from California, and the mother still has a significant amount of family near the Santa Ynez area. Her parents, who at the time of the hearing lived in Florence, Alabama, were attending the University of North Alabama, but the mother’s father testified that he and the mother’s mother intended to return to California after they graduated. The father also has family in Florence, including his mother, who has babysat the child, and his younger brother, who is close to the child.
The mother wanted to move to Santa Ynez because she was offered a job earning approximately $50,000 a year. The mother stated that her clothing business had failed and that she had not been able to locate a job in Florence. The mother stated that relocating to California would benefit the child because she would be more financially capable of caring for the child, because she and the child would have a strong support system in California, and because she would be able to enroll the child into what the mother perceived as a better school. She stated that the father and the child would be able to maintain consistent contact with' one another because they could use Skype, which is a means of talking via a computer using a Web camera.
*959 The mother alleged that she had been the primary caretaker of the child and that the father had not exercised all of his allotted visitation with the child. The father denied missing visitation with the child. However, there was no dispute about the father’s close relationship with the child. The father testified that he desired to maintain a close relationship with the child because he had not had the benefit of a relationship with his father. The father is self-employed and financially stable.
The Alabama Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala. Code 1975 (“the Act”), governs the outcome of this case. In the Act, our legislature set forth the general philosophy of the State of Alabama that was initially established in § 30-3-150, Ala.Code 1975, which is “that children need both parents, even after a divorce.” § 30-3-160, Ala.Code 1975 (emphasis added). Section 30-3-150, which sets forth this state’s policy regarding joint custody, provides:
“It is the policy of this state to assure that minor children have frequent and continuing contact with parents who have shoum the ability to act in the best interest of their children and to encourage parents to share in the rights and responsibilities of rearing their children after the parents have separated or dissolved their marriage. Joint custody does not necessarily mean equal physical custody.”
(Emphasis added.)
To further this underlying general philosophy, our legislature, in the Act, required that:
“In proceedings under this article unless there has been a determination that the party objecting to the change of the principal residence of the child has been found to have committed domestic violence or child abuse, there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party.”
Ala.Code 1975, § 30-3-169.4 (emphasis added).
I believe that the Act was enacted for just such a case as this. I agree with then Judge Murdock’s statement in his special writing in Toler v. Toler, 947 So.2d 416, 424 (Ala.Civ.App.2006), that “the Act adopts a new presumption and new rules of decision, including those in §§ 30-3-169.3 and 30-3-169.4, obviously intended to discourage unnecessary relocations by custodial parents that would make the maintenance of relationships between a child and both of his or her parents less likely or less fully realized.” (Murdock, J., concurring specially). The rebuttable presumption found in § 30-3-169.4 is not a minimal presumption to overcome. The standard, as supported by the enunciation of the public policy of this State in § 30-3-150 and § 30-3-160, is that the child needs both parents. In order to overcome this standard and in order to overcome the burden set forth in § 30-3-169.4, the parent seeking to relocate the principal residence of the child has a significant hurdle to overcome. This hurdle cannot be overcome by evidence indicating merely that the relocating parent will have a higher-paying job and a “support group” out of state.
The undisputed facts in this case reveal that the father is an excellent parent, that the father has a strong bond with the child, that the father has consistently provided support for the child, and that the father desires to maintain a close relationship with the child. I sympathize with the *960 situation of the mother and her desire to better her financial circumstances, and there is no doubt that the child’s relocation to Santa Ynez would provide some benefit to the child. I simply cannot conclude, as the majority of this Court does, that the mother met her burden of proof pursuant to § 30-3-169.4. In my opinion, this case is the epitome of a case involving an unnecessary move that will make it difficult for the father to maintain a strong relationship with the child. I believe that the child’s maintenance of a strong relationship with the father overshadows any alleged benefit that would occur upon the child’s relocation to California.
Tellingly, I am not convinced that “video-telephone conversations” between the father and the child will compensate for the fact that the child will not have regular, meaningful, face-to-face contact with the father. Nor do I believe that an award of visitation that allows the father to have almost as many visitation days as he exercised while the child lived in Alabama will replace the fact the father simply will not be able to participate in the irreplaceable milestones in the child’s life such as school activities, sports activities, and church activities, as well as a laundry list of other “firsts” that the father will not be present for, especially after the child begins school full-time in California. The father specifically expressed his desire to maintain a close and meaningful relationship with the child, his son, because the father had not had the benefit of a close relationship with his father. The decision to allow a change in the principal residence of the child negates any realistic possibility of the father’s maintaining the same type of relationship that he now shares with the child.
I do not take lightly this court’s duty to presume that factual findings made by a trial court are correct. However, after review of the record in this case, I fear that the policy of this state, which is to encourage frequent and continual contact between a child and both of his or her parents after a divorce, is disintegrating under a mistaken belief that a relocating parent does not have a significant burden to overcome, especially in cases such as this where the nonrelocating parent and the child have a strong bond.