On Application for Rehearing
 

 BRYAN, Judge.
 

 The opinion of August 13, 2010, is withdrawn, and the following is substituted therefor.
 

 Brandi Kaye Pepper (Greeson) (“the mother”) appeals from a judgment of the Limestone Circuit Court (“the trial court”) insofar as it modified custody of the parties’ two minor children and awarded Forrest Dewayne Pepper (“the father”) sole physical custody of the children. We reverse.
 

 Procedural History
 

 The parties were divorced by a judgment of the trial court in June 2007. Pursuant to the divorce judgment, which incorporated an agreement of the parties, the parties were awarded joint physical custody of the parties’ children, a boy, born in December 2000 (“the older child”), and a girl, born in June 2004 (“the younger child”) (the older child and the younger child are hereinafter collectively referred to as “the children”).
 
 [1]
 
 The trial court entered an order on July 1, 2008, that set forth specific visitation times for the father, but the order did not change the parties’ status as joint physical custodians of the children (“the 2008 order”). Pursuant to that order, the father exercised physical custody of the children every first and third weekend of each month, and, when applicable, the fifth weekend of every other month that had a fifth weekend. The father’s weekend visitation was from Friday at 6:00 p.m. until Tuesday at 8:00 p.m. Also, following the second and fourth weekend of each month, the father had physical custody of the children from Monday at 8:00 a.m. until Tuesday at 8:00 p.m. The 2008 order also provided for one full month of visitation in the summer as well as visitation on holidays, birthdays, school breaks, and special family events.
 

 On December 11, 2008, the father filed a petition to modify custody and a petition opposing the relocation of the principal residence of the children, pursuant to § 30-3-169.1, Ala.Code 1975, a part of the Alabama Parent-Child Relationship Protection Act, codified at § 30-3-160 et seq., Ala.Code 1975 (“the Act”). In his petition opposing relocation, the father alleged that he had received a letter from the mother on November 13, 2008, that notified him of her intent to change the principal residence of the children by moving out of state.
 
 See
 
 Ala.Code 1975, § 30-3-164. The father requested permanent and pen-dente lite primary physical custody of the children. The mother responded to the father’s objection to the proposed relocation of the principal residence of the chil
 
 *423
 
 dren and requested that the trial court enter an order that allowed her to move with the children to Winchester, Tennessee, pending a final hearing on the father’s petitions.
 

 The trial court conducted a pendente lite hearing, and on March 13, 2009, the trial court entered a pendente lite order that, pursuant to § 30-3-169.2, Ala.Code 1975, restrained the mother from changing the principal residence of the children. The trial court conducted a final ore tenus hearing on June 8, 2009, and entered a final judgment on June 25, 2009 (“the June 2009 judgment”). Pursuant to that judgment, the father was awarded sole physical custody of the children based on the trial court’s finding that there had been a material change in circumstances. The judgment awarded the parties joint legal custody of the children, awarded the mother visitation with the children, and ordered the mother to pay child support for the children.
 

 The mother filed a motion to alter, amend, or vacate the June 2009 judgment or, in the alternative, a motion for a new trial, pursuant to Rule 59, Ala. R. Civ. P. In her motion, the mother alleged that the father had not demonstrated that there had been a material change in circumstances because she had not moved to Tennessee during the pendency of the proceeding and, she alleged, she had “abandoned” her plans to move to Tennessee. Thus, she argued, the only material change in circumstances alleged and proven by the father, i.e., the proposed change of principal residence of the children, no longer existed. The trial court denied the mother’s postjudgment motion, noting that the mother had failed to present any evidence indicating that she would have been willing to abandon her plans to move to Tennessee. The mother timely appealed.
 

 Issue
 

 The sole issue presented by the mother on appeal is whether the trial court erred by finding that a material change in circumstances existed sufficient to justify modification of custody.
 

 Facts
 

 At the time of the final hearing, the children were ages eight and four years old. It was undisputed that the parties exercised joint legal and physical custody of the children pursuant to the 2008 order; however, the mother maintained that she was the primary caretaker of the children.
 

 The mother married Marvin Greeson in July 2008, and she moved from Limestone County to Huntsville shortly after the 2008 order was entered. At the time of the final hearing, the mother and the children lived in an apartment in Huntsville. The mother and Marvin, who worked as a fireman near Winchester, had obtained a house in Winchester that had three bedrooms, and the mother and Marvin were planning to add a fourth bedroom to the house. According to the mother, she was planning to move to Winchester because Marvin’s ex-wife had been diagnosed with two tumors in her brain stem and, thus, was not able to care for Marvin’s children, who were ages 15 and 17 years old at the time of the final hearing. Marvin’s children apparently lived in or near Winchester, and the mother and Marvin were planning to move to Winchester to assist Marvin’s family in caring for Marvin’s children.
 

 The mother worked as a registered nurse at Huntsville Hospital and she worked three 12-hour shifts each week and every third weekend. The mother testified that she would continue to work at Huntsville Hospital after she relocated to Winchester and that it took approximately 50 minutes to drive from her home in Winchester to Huntsville Hospital. The
 
 *424
 
 mother stated that she is able to schedule her workdays around Marvin’s work schedule so that either she or Marvin is able to be home with the children, if needed. The mother stated that Marvin’s parents were available to care for the children in Winchester if both she and Marvin were unable to do so.
 

 The mother testified that the children had enjoyed themselves during previous visits to Winchester and that they had attended church and family gatherings there. She admitted that only Marvin’s family lived in or near Winchester and that most of her immediate family lived in Limestone County, although some of her immediate family lived in Morgan County. The mother acknowledged that the friends and family of the children were in Alabama and that they attend church with the father in Alabama.
 

 The mother presented a proposed visitation schedule that permitted the father to have an additional weekend visitation in lieu of his current visitation schedule. The mother stated that she was requesting that, other than visitation, prior orders regarding custody and child support remain the same. The mother stated that to drive from Winchester to East Limestone Road, where the parties exchanged the children, took approximately 70 minutes. The mother stated that the children were not involved in any extracurricular activities and that she knew of no reason that the schools in Winchester could not educate the children as well as the schools in Alabama. The mother admitted that most of her knowledge about the schools that the children would be attending in or near Winchester came from Marvin or his family members.
 

 The mother testified that she was concerned about the father’s having primary physical custody of the children because she had heard the father use racial epithets in front of the children. The mother stated that she had not heard the father use racial epithets until after the children were born. The father denied being a racist and using racial epithets.
 

 The father lived in Limestone County and was employed as a machine inspector for the Alabama National Guard in Huntsville. His work hours were Tuesday through Friday, from 7:00 a.m. until 5:30 p.m. The father testified that his mother, the paternal grandmother of the children, was able to help him get the older child to school on days that he had to work. The younger child was not in school yet, and the father testified that he kept the younger child at home with him on Mondays and that the paternal grandmother cared for the younger child on Tuesdays while he was at work. According to the father, the older child had attended Creekside Elementary School (“Creekside”) before the entry of the 2008 order because the mother lived in Limestone County at that time. However, the older child had to change schools as a result of the mother’s move to Huntsville in 2008. The father testified that his house was for sale at the time of the final hearing and that, if he was awarded custody and his house had not sold by August 2009, he and the children would live temporarily with the paternal grandmother so that the older child could attend Creekside in the fall of 2009.
 

 The father testified that he did not have any family in Winchester, and, to his knowledge, the mother did not have any family in Winchester either. The father testified that he was able to care for and meet the needs of the children. The father stated that he had been involved with parent/teacher conferences, field trips, and “awards day” at the older child’s schools and that he maintained consistent telephone visitation with the children on days that he did not have physical custody.
 
 *425
 
 The father stated that he wanted physical custody of the children or, in the alternative, that he wanted the children to remain in Madison County with the mother so that he could maintain the visitation schedule that he had been exercising at the time of the final hearing.
 

 Standard of Review
 

 “Our standard of review is well settled. A trial court’s judgment based on ore tenus evidence will be presumed correct and will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that the judgment is unsupported by the evidence so as to be plainly and palpably wrong.
 
 Scholl v. Parsons,
 
 655 So.2d 1060, 1062 (Ala.Civ.App.1995). However, when an appellate court is presented with an issue of law, we review the judgment of the trial court as to that issue de novo.
 
 Ex parte Perkins,
 
 646 So.2d 46 (Ala.1994).”
 

 Henderson v. Henderson,
 
 978 So.2d 86, 39 (Ala.Civ.App.2007).
 

 Discussion
 

 On appeal, the mother argues that the trial court erred by finding that the father had demonstrated that a material change in circumstances had occurred to justify a modification of custody. The mother does not argue that an actual change of the principal residence of the children would not have constituted a material change in circumstances.
 
 See Marsh v. Smith,
 
 37 So.3d 174, 178 (Ala.Civ.App.2009) (concluding that “a change in the principal residence of a child constitutes, ipso facto, a ‘material change in circumstances’ ”). Instead, the mother argues that because she was never permitted to change the principal residence of the children either by temporary order or by final judgment,
 
 see
 
 § 30-3-169.3(a), Ala.Code 1975, there existed no material change of circumstances and, therefore, custody of the children should not have been modified.
 

 Section 30-3-169.3(a) provides:
 

 “Upon the entry of a temporary order or upon final judgment permitting the change of principal residence of a child, a court may consider a proposed change of principal residence of a child as a factor to support a change of custody of the child.
 
 In determining whether a proposed or actual change of principal residence of a minor child should cause a change in custody of that child, a court shall take into account all factors affecting the child, including, but not limited to, the following....”
 

 (Emphasis added.)
 

 Section 30-3-169.3(a) goes on to list 17 factors for a trial court to consider when determining whether a proposed change of principal residence of a child, i.e., a change made after entry of a temporary order, or an actual change of principal residence of the child, i.e., a change made after entry of a final judgment, should result in a change of custody. A plain reading of § 30-3-169.3 allows a trial court to consider a proposed change of principal residence of a child as a factor to support a change of custody only “[ujpon the entry of a temporary order or upon a final judgment permitting the change of principal residence of a child.”
 
 See Ex parte T.B.,
 
 698 So.2d 127, 130 (Ala.1997) (“When the language of a statute is plain and unambiguous, as in this case, courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.”).
 

 The record clearly indicates that the trial court did not permit the mother to temporarily change the principal residence of the children during the pendency
 
 *426
 
 of the proceedings. The trial court’s final judgment did not make specific findings of fact regarding whether the mother had met her burden of rebutting the presumption found in § 30-3-169.4—that a change of principal residence of the children was not in the best interests of the children.
 
 [2]
 
 However, the Act does not require the trial court to make specific findings of fact in its judgment,
 
 see Clements v. Clements,
 
 906 So.2d 952, 957 (Ala.Civ.App.2005), and, in the absence of specific findings of fact, “‘this court must assume that the trial court made those findings necessary to support its judgment.’ ”
 
 Id.
 
 (quoting
 
 Steed v. Steed,
 
 877 So.2d 602, 603 (Ala.Civ. App.2003)). Thus, because the trial court modified custody of the children, we must assume either that the trial court determined that the mother should have been permitted to change the principal residence of the children or that the trial court found that the father had otherwise demonstrated that custody of the children was due to be modified without consideration of the proposed change of the principal residence of the children. Our review of the evidence presented by the father reveals insufficient evidence to support a finding that a material change in circumstances affecting the welfare of the children had occurred since the entry of the last custody judgment.
 
 See C.D.K.S. v. K.W.K.,
 
 40 So.3d 736, 740 (Ala.Civ.App.2009) (discussing the burden of proving a material change in circumstances in a custody-modification case).
 

 Accordingly, we must assume that the trial court determined that the mother should have been permitted to change the principal residence of the children. In doing so, we must also assume that the trial court concluded that the mother had met her burden pursuant to § 30-3-169.4 and that, after the burden shifted to the father, the father failed to meet his burden of proving that the change in principal residence of the children was not in their best interests. We must assume that the trial court made those findings of fact because only those findings will support a determination that the mother had demonstrated that she should be permitted to change the principal residence of the children and, thus, only those findings would potentially support the trial court’s custody-modification judgment.
 
 [3]
 

 See
 
 § 30-3-169.3.
 

 Our review of the record reveals that the mother presented little evidence to rebut the presumption that a change of principal residence of the children would not be in the best interests of the children. It was undisputed that the father’s and the mother’s families lived in or near Limestone County and that the children did not have any family, other than Marvin’s family, in Winchester. The evidence indicated that the children spent a significant amount of time with the father and that the father was involved in the daily lives of the children. The evidence also indicated that the maternal and paternal grandmothers of the children, who lived in Limestone County, had assisted in the care of the children when the mother and the father were unable to do so. The mother did not
 
 *427
 
 present any evidence to support a finding that the children would have more educational or cultural opportunities in Winchester. Furthermore, the evidence was undisputed that the only reason that the mother wanted to relocate to Winchester was for the benefit of Marvin’s family. We find the mother’s desire to assist Marvin and his family noble, but the mother was still required to rebut the presumption that a change of the principal residence of the children was not in the best interests of the children. In light of the evidence of the strong involvement of the father in the lives of the children compared to the lack of evidence of any benefit provided to the children by relocating to Winchester, we conclude that the evidence presented by the mother was insufficient to support a finding that the mother had rebutted the presumption found in § 30-3-169.4.
 

 Accordingly, the trial court could not have concluded that the mother should have been permitted to change the principal residence of the children. Because the mother was not permitted to change the principal residence of the children, the trial court could not have modified custody of the children based only on the mother’s intent to relocate to Tennessee.
 
 [4]
 

 The father argues that the mother failed to present testimony at the final hearing indicating that she was willing to remain in Huntsville if the trial court concluded that she could not change the principal residence of the children. However, the plain language of § 30-3-169.3 reveals an implicit presumption that no material change in circumstances exists if the relocating parent is not permitted, by temporary order or by final judgment, to change the principal residence of the children. As then Judge Murdock pointed out in his special concurrence in
 
 Toler v. Toler,
 
 947 So.2d 416, 423 n. 3 (Ala.Civ.App.2006), “[i]n a case in which the custodial parent subsequently chooses to remain in the same locale with the child, the cause for the proposed change of custody would be eliminated and the case would become moot, at least to that extent.”
 

 In his application for rehearing, the father argues that our conclusion implies that a trial court should refrain from granting custody to one parent or the other until the relocating parent has established himself or herself in a new location. We reject the father’s interpretation of our holding. Our decision is based on the plain language of § 30-3-169.3.
 

 Conclusion
 

 The judgment of the trial court is due to be reversed. Accordingly, we reverse the judgment of the trial court and remand the
 
 *428
 
 cause with instructions to vacate the June 2009 judgment.
 

 The mother’s and the father’s requests for an award of their attorney’s fees on appeal are denied.
 

 APPLICATION FOR REHEARING OVERRULED; OPINION OF AUGUST 13, 2010, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 PITTMAN and THOMAS, JJ., concur.
 

 THOMPSON, P.J., and MOORE, J., concur in the result, without writings.
 

 [1]
 

 . The divorce judgment did not set forth which party was awarded legal custody of the children.
 

 [2]
 

 . Section 30-3-169.4, Ala.Code 1975, provides, in pertinent part:
 

 "In proceedings under this article ..., there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party.”
 

 [3]
 

 . This determination is based on our conclusion that there was not sufficient evidence in the record to support a judgment modifying custody on any other grounds.
 

 [4]
 

 . In his application for rehearing, the father argues that this court is "assuming critical procedural history” by assuming that the trial court determined that the mother overcame the presumption against allowing a parent to change the residence of the children. We disagree. We acknowledge that it is possible that the trial court could have properly concluded that the mother had not met her burden of overcoming the presumption found in § 30-3-169.4. However, in that event, the trial court was still not permitted to consider changing custody of the children based on the proposed change of their principal residence because there was no temporary order or final judgment permitting the mother to change the principal residence of the children.
 
 See
 
 § 30-3-169.3. Furthermore, as discussed
 
 supra,
 
 the trial court could not have modified custody on other grounds because the father did not present sufficient evidence to support a judgment modifying custody of the children.
 
 Cf. Patchett v. Patchett,
 
 469 So.2d 642, 644 (Ala.Civ.App.1985) (a case decided before the enactment of the Act in which this court concluded that "the trial court abused its discretion when it decreed that the [mother]'s intent to move [wa]s a material change of circumstances that would justify automatically changing custody of the child to the father when and if the [mother] moves”).