954 So.2d 1227 (2007)
Aaron CECEMSKI, Appellant,
v.
Ashly Ann CECEMSKI, Appellee.
No. 2D06-2391.
District Court of Appeal of Florida, Second District.
April 20, 2007.
J. Christopher Lombardo and Jennifer L. DeVries of Woodward, Pires & Lombardo, P.A., Naples, for Appellant.
No appearance for Appellee.
VILLANTI, Judge.
Aaron Cecemski appeals the relocation granted in the final judgment of dissolution of his marriage to Ashly Cecemski. Mr. Cecemski does not challenge the dissolution of marriage itself, the trial court's decisions regarding child support or shared parental responsibility, its designation of Mrs. Cecemski as the primary residential parent, or related matters.[1] Mr. Cecemski challenges only the trial court's decision to allow Mrs. Cecemski to relocate from Marco Island, Florida, to Louisiana[2] with the couple's then two-year-old daughter.[3] *1228 Because the trial court's decision to grant relocation was not supported by competent substantial evidence, we reverse.
In deciding a request for relocation, including a request made prior to a final judgment of dissolution, section 61.13(2)(d), Florida Statutes (2005),[4] requires a trial court to consider the following factors:
1. Whether the move would be likely to improve the general quality of life for both the residential parent and the child.
2. The extent to which visitation rights have been allowed and exercised.
3. Whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent.
5. Whether the cost of transportation is financially affordable by one or both parties.
6. Whether the move is in the best interests of the child.
See Borchard v. Borchard, 730 So.2d 748, 749-50 (Fla. 2d DCA 1999); Kuntz v. Kuntz, 780 So.2d 1022, 1023 (Fla. 4th DCA 2001). Under section 61.13(2)(d), there is no presumption in favor of, or against, relocation. Further, although the record must reflect that the trial court considered the statutory factors, section 61.13(2)(d) does not require the court to make specific findings regarding the factors. Mian v. Mian, 775 So.2d 357, 359 n. 2 (Fla. 2d DCA 2000).
Here, it is readily apparent that the trial court considered the six statutory factors because it commendably expressly noted each factor in the final judgment. On appeal, we cannot reweigh the evidence considered by the trial court. See Kuntz, 780 So.2d at 1023. Instead, we must affirm if substantial competent evidence exists to support the trial court's decision. See Berrebbi v. Clarke, 870 So.2d 172, 173 (Fla. 2d DCA 2004) (reversing an order granting relocation because the trial court's findings were not supported by substantial competent evidence); Kuntz, 780 So.2d at 1023 (affirming a decision denying relocation because the trial court's findings were supported by substantial competent evidence). However, after a thorough review of the record on appeal, we find that the facts in virtually every pertinent matter of consequence do not provide substantial competent evidence to support the trial court's findings, and hence, it was reversible error to grant the request for relocation. We note that factual findings often provide support for more than one statutory factor, but under the facts of this case, it is not necessary for us to address which finding pertains to which factor; the net result is that the trial court's ultimate conclusionthat the move was in the child's best interestis *1229 simply not justified by the evidence presented.
For example, in its first pertinent finding, the trial court found that Mrs. Cecemski could not "afford to rent her own apartment" and that "there is little affordable housing available on Marco Island." However, the trial transcript reveals no evidenceexpert testimony, lay testimony, stipulation, judicial notice, or otherwise regarding the housing market on Marco Island. Therefore, the trial court's assessment of Marco Island's affordable housing market, even if it seems intuitively correct, is supposition or conjecture, which axiomatically cannot support the conclusion that Mrs. Cecemski could not afford to rent her own apartment.
The trial court further found that the child's general quality of life would improve by relocating to Louisiana because Mrs. Cecemski "would be able to be gainfully employed, living in a home with her grandmother, and the child would be enrolled in a daycare program at a much earlier time" than if they were to stay in Marco Island. On the contrary, Mrs. Cecemski testified that she did not have a job lined up in Louisiana nor had she even applied for any jobs in Louisiana. In fact, she anticipated taking a job in Louisiana that paid significantly less than her existing job in Marco Island.
Moreover, although Mrs. Cecemski testified that she planned to live rent-free with her nontestifying grandmother, the grandmother's house was located next door to Mrs. Cecemski's parents' house. This is problematic because the trial court also found that Mrs. Cecemski's parents were drug users with whom the minor child would not be permitted to visit without the presence of "an appropriate qualified professional, non-family third party visitation facilitator."[5] The trial court did not arrange for the appointment of such a facilitator nor were the parties ordered to obtain the court's approval for their own chosen facilitator. Further, regardless of this omission, the trial court made no findings as to the affordability or viability of such a facilitator, and enforcement and jurisdictional issues would still remain. Thus, such uncontrolled proximity to Mrs. Cecemski's parents was not likely to foster an improved quality of life for the child.
In considering the fourth statutory factor of whether a substitute visitation schedule would "foster a continuing meaningful relationship between the child and [Mr. Cecemski]," the trial court discussed at considerable length both parties' drug use and then found that a particular substitute visitation schedule "should be implemented" without specifying how or why the substitute schedule related to the parties' drug use. The visitation schedule provided that, every six weeks until the child turns five years old, Mrs. Cecemski was to drive south from Louisiana with the child, and Mr. Cecemski was to drive north from Marco Island. After driving for seven to eight hours each, the parties would meet halfway, "probably in the Florida Panhandle area," so Mr. Cecemski could spend the weekend with the child. The *1230 trial court defined the weekend period as extending from 9 a.m. on Saturday through 7 p.m. on Sunday. In between these weekend visits, "to further facilitate visitation and contact," Mrs. Cecemski was to send videotapes and pictures of the child to Mr. Cecemski, the parties were to "attempt to obtain videocams for their computers to effectuate `videocam' visitation," and Mrs. Cecemski was to "coordinate frequent and liberal telephone contact" between the child and Mr. Cecemski. The trial court also suggested that Mr. Cecemski could videotape himself reading stories and then Mrs. Cecemski could play the tapes for the child. More important, there was no evidence to support the trial court's underlying assumption that the parties could realistically overcome the obvious obstacles associated with complying with the visitation scheme's framework, such as time, distance, finances, computer and videocam access or ownership, and work schedules; nor was there any evidence suggesting that such a substitute visitation scheme would generally be in the child's best intereststhe sixth factor of section 61.13(2)(d), acting as a linchpin, summarizing the other five factors.
Neither does the final judgment expressly find that this substitute visitation schedule would foster a continuing meaningful relationship, and based on the record before us, we do not see how the trial court could have made such a finding. The testimony was clear that both parties have very limited financial resources. Consequently, here, a recurring weekend visitation getaway to the Florida Panhandle from Marco Island and Louisiana, among other things, is a concept that seems more impractical than practical. For example, as argued by Mr. Cecemski compliance with the trial court's order, at a minimum, would entail both parties renting hotel rooms for Saturday night or making the drive home and back, requiring expensive fuel and eating up precious visitation time; they may also need hotel rooms for Friday night and Sunday night unless they planned to drive the seven to eight hours overnight before beginning the weekend at 9 a.m. on Saturday and after ending the visitation at 7 p.m. on Sunday. In addition, Mr. Cecemski would need to plan father/daughter activities, some of which would likely cost money that he cannot afford. This particular schedule with its long drives and short visits is not likely to foster any type of meaningful relationship between the child and Mr. Cecemski. See Doherty v. Padgett, 942 So.2d 464, 465 (Fla. 2d DCA 2006) (expressing concern that a long drive for a weekend visit was not in the child's best interest).
Further, the plan to meet halfway does not appear to have been proposed by the parties, except to the extent that Mrs. Cecemski, in response to a question posed by her attorney, testified that she would be willing to drive to Marco Island or meet in the middle. Although Mrs. Cecemski makes no appearance in this appeal, she may also be aggrieved by the substitute visitation scheme's infringement on her quality time with her daughter along with what appears to be an impossible financial burden.
In addition to the impractical visitation schedule, there was no evidence to support a finding that videos and phone calls with this child would foster a continuing meaningful relationship in lieu of the traditional visitation the child was enjoying with her father and his family before the substitute visitation schedule was engineered by the trial court. This court has repeatedly held that an adequate substitute visitation schedule is not expected to foster the same type or an equivalent degree of relationship between the child and the secondary residential parent as was occurring before relocation. See Fredman v. Fredman, 917 So.2d 1038, 1041 (Fla. 2d DCA 2006); Buonavolonta *1231 v. Buonavolonta, 846 So.2d 649, 650-51 (Fla. 2d DCA 2003); Wilson v. Wilson, 827 So.2d 401, 403 (Fla. 2d DCA 2002). Rather, the substitute visitation schedule must merely foster a continuing meaningful relationship. Id. Indeed, if relocation required that the same type of relationship be maintained, it is unlikely that relocation would ever be granted. See Fredman, 917 So.2d at 1041; Buonavolonta, 846 So.2d at 651. Here, it is obvious that the substitute visitation schedule will not foster the same type of relationship between the child and Mr. Cecemski. However, it surely will not adequately foster a continuing meaningful relationship either.
In closing, it appears that the trial court struggled with this "sad and difficult" case, searching for the ability to fashion its desired reliefto allow relocation with substitute visitation and at the same time, despite distance, enforcement, financial, and jurisdictional issues, still ensure the child's best interestwithout DCF's involvement or that of its counterpart in Louisiana.
Because there was no substantial competent evidence to support the trial court's decision allowing relocation, it was an abuse of discretion to grant Mrs. Cecemski's request for relocation. Accordingly, we reverse and remand for the trial court to enter an order vacating that portion of the final judgment allowing relocation and for further proceedings as appropriate on remand. In all other respects, the final judgment is affirmed.
Reversed in part, affirmed in part, and remanded with instructions.
SILBERMAN and LaROSE, JJ., Concur.
NOTES
[1] The parties stipulated to a settlement of marital personal property and liabilities, which the trial court approved.
[2] Although the final judgment grants relocation to Louisiana in general, we presume that Mrs. Cecemski planned to move to Lake Charles, Louisiana, because she grew up there.
[3] Mrs. Cecemski's motion for relocation was filed after Mr. Cecemski's petition for dissolution. All issues were tried together and determined under the umbrella of the same final judgment for dissolution of marriage.
[4] We note that the requirements provided for by section 61.13(2)(d) were deleted and different requirements were implemented in the newly added section 61.13001, effective October 1, 2006. See ch.2006-245, § 2, Laws of Fla. However, the old requirements of section 61.13(2)(d) apply to the present case because the trial was held on January 17, 2006, and the final judgment for dissolution was rendered on April 19, 2006, prior to the statutory change. See § 61.13001(11)(b), Fla. Stat. (2006).
[5] Unquestionably, the trial court faced numerous issuesjurisdictional and otherwise in attempting to fashion its desired relief. Partially in light of these issues, the trial court noted during the trial that it wanted to get the Department of Children and Family Services (DCF) involved and required a local DCF representative to sit in on the subsequent hearing at which the court announced its partial ruling granting relocation. Despite the parties' lifestyles, the accusations lodged by each party against the other, and certain negative admissions made by each party, the DCF representative stated that she did not anticipate the filing of a dependency action. Nevertheless, albeit with good intentions, the trial court attempted to overcome these insurmountable impediments on its own.