992 So.2d 346 (2008)
Neta MILLER, Appellant,
v.
Shawn MILLER, Appellee.
No. 3D07-3173.
District Court of Appeal of Florida, Third District.
October 1, 2008.
*347 Franklin & Criscuolo, and Barry S. Franklin and Donald G. Criscuolo, for appellant.
Cheri A. Shapiro, Key West, for appellee.
Before WELLS, SUAREZ, and SALTER, JJ.
WELLS, Judge.
The former wife, Neta Miller ("the Mother"), appeals from an order simultaneously denying her application to relocate with the parties' three-year-old child from the Florida Keys to Atlanta, Georgia, and modifying custody to change the primary residential parent from herself to her former husband, Shawn Miller ("the Father"). For the following reasons, we reverse.
The parties were married on May 1, 2003. The only child of this marriage was born on May 13, 2004. The marriage was dissolved on June 14, 2006.
The final judgment dissolving this marriage incorporated a marital settlement agreement which, as pertinent here, awarded shared parental responsibility to the parties, with the Mother as the primary residential parent. The Father was awarded two overnight, twenty-four hour visits per week as well as visitation for an hour or two a couple more times per week until the parties' child reached the age of five, at which time visitation is to be revisited.
Following the divorce, the Mother married the regional director of a biotechnology company located in Atlanta, Georgia and in accordance with section 61.13001 of the Florida Statutes sought permission to relocate with the parties' son. See § 61.13001, Fla. Stat. (2007). The Father objected, moved for a temporary injunction, and filed a petition for modification of custody alleging primarily the Mother's desire to relocate as a basis for changing custody:
There has been a substantial change in circumstances since entry of the Final Judgment including, but not limited to the following:
The mother has decided to relocate out of the state of Florida with the minor child. The mother is unable to maintain a stable and healthy relationship with any or her paramours, putting her own *348 interests above those of her child's.[[1]] The mother has no family in Georgia and is removing the minor child from his father, grandmother, aunt, and uncle, all of whom provide a warm, healthy and stable environment for the child.
The Mother's emergency motion for temporary relief to leave Florida pending resolution of these issues was denied and a Homestudy/Custody Evaluation was ordered. Following trial, the motion to relocate was denied, and the petition for modification granted on no more, as the order expressly states (and the Father concedes), than denial of the relocation petition:
The Mother's petition to relocate with the child, [ ], is hereby DENIED; thus establishing the primary residential parent of the child to be the Father, Shawn Miller.
We review the instant custody modification determination de novo and reverse because the Father neither pled nor proved "that the circumstances have substantially, materially changed since the original custody determination, and ... that the child's best interests justify changing custody." See Wade v. Hirschman, 903 So.2d 928, 931, n. 2 (Fla.2005) (quoting Cooper v. Gress, 854 So.2d 262, 265 (Fla. 1st DCA 2003)). As this court held in Segarra v. Segarra, 947 So.2d 543, 547 (Fla. 3d DCA 2006), "[a] desire to relocate alone, as a matter of law, is not a substantial change in circumstances sufficient to warrant modification of custody." Because the trial court's decision to change custody turned solely on denial of the petition to relocate and no demonstrated substantial change in circumstances, the custody modification award must be reversed. See Segarra, 947 So.2d at 547; see also Bell v. Hill, 976 So.2d 1192, 1193 (Fla. 2d DCA 2008) ("Critically absent from the modification order is a finding that there had been a substantial change in circumstances subsequent to the entry of the operative visitation schedule and that a change in visitation was in the best interest of the child, and we cannot intuit those findings from this record."); Foster v. Pearson, 925 So.2d 1136, 1137 (Fla. 5th DCA 2006) (concluding "the trial court erred in changing temporary custody without making findings as to both a substantial change of circumstances and the best interests of the child").
In light of our reversal of the modification award, we also reverse denial of the relocation request to permit the trial court to measure just the relocation request (as opposed to both the relocation request and the motion to modify custody) against the criteria set out in section 61.13001(7). In doing so, we remind the trial court that this provision expressly states that no presumption against relocation arises because a move will materially affect a current visitation schedule:
No presumption shall arise in favor of or against a request to relocate with the child when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact, access, and time-sharing with the nonrelocating parent or other person.

§ 61.13001(7), Fla. Stat. (2007) (emphasis added); see Norris v. Heckerman, 972 So.2d 1098, 1098-99 (Fla. 1st DCA 2008).
There are two reasons for this reminder and our emphasis on this portion of section 61.13001. First, the court below expressly outlined and appeared to rely on a preference for the existing visitation schedule as a basis for denying relocation. Second, the marital settlement agreement incorporated *349 into the final judgment evidences no such ongoing preference, expressly providing for de novo review of the existing visitation schedule when this child turns five, an event only months from now.
We also reverse the relocation denial because on the limited record before us[2] it appears that contrary to the trial court's conclusion, the Mother met her initial burden of proof regarding relocation. § 61.13001(8), Fla. Stat. (2007) (providing that where an objection to a relocation request is made, the initial burden is on the parent seeking to relocate to prove by a preponderance of the evidence that relocation is in the child's best interest and that once that burden is met, the burden shifts to the non-relocating parent to show by a preponderance of the evidence that the proposed relocation is not in the best interest of the child); Norris, 972 So.2d at 1099. The order denying relocation confirms that this child has been in the primary care of the Mother since his birth and thus because he is only three years old, has little in the way of meaningful school, community, or friendship ties to Key West. As to the Mother, the order confirms that: (1) the Mother, who was born in Israel and worked in her brother's store before the child's birth, "does not have much of a future in Key West"; (2) the Mother is now married to a biotechnology executive who lives and works in Atlanta and who has agreed to pay all or part of the costs of transporting the child to Key West for visitation; (3) a member of the new husband's family has offered the Mother a job in Atlanta paying $750 a week.
As to the Father, the order confirms that the Father, to his credit, works two jobs as a server in local restaurants to make ends meet but that because of the Father's work schedule, the paternal grandmother necessarily "spends a great deal of time with [the child], including caring for him while the father is at work." This, unfortunately, leaves the child chiefly in the paternal grandmother's custody and subjects him to risks associated with the grandmother's unfenced swimming pool and the transients to whom she rents a portion of her property.
In addition to the facts recited in the order on relocation, the reports on file from all of the experts who studied this family confirm that this child is in need of consistent discipline which the Father is either not capable or not willing to impose and which the Mother will now have more time to exert. On this record, it appears that contrary to the trial court's conclusion, the Mother met her initial burden, while the Father failed to meet his.[3]
We therefore reverse that portion of the order denying the Mother's petition for relocation and remand for reconsideration of that motion alone under the factors stated in section 61.13007(7), taking into consideration that portion of the parties' agreement that visitation be addressed anew at the time the child reaches the age of five. See Muller v. Muller, 964 So.2d 732, 734-35 (Fla. 3d DCA 2007) (concluding that notwithstanding abuse of discretion *350 standard, "[a]fter a thorough review of the entire record, we find that the trial court abused its discretion in granting the Mother's petition to relocate with the child to Grand Junction. Although the trial court noted each of the factors listed under section 61.13007(7) in its order, the record is devoid of corroborating facts supporting nearly every subsection of the statute. Therefore, we find that the trial court erred in granting the Mother's petition for relocation. See Cecemski v. Cecemski, 954 So.2d 1227 (Fla. 2d DCA 2007) (reversing an order granting relocation because the trial court's findings were not supported by substantial competent evidence).").
Accordingly, the order under review is in its entirety reversed and remanded for further consideration consistent with this opinion.
NOTES
[1] This petition was filed before the Mother and her fiancé had actually married.
[2] We are told that the Mother's trial counsel, (not appellate counsel), has been disbarred and there is, unfortunately, no transcript of the proceedings.
[3] We simply reject the trial court's reliance in denying relocation on the observation of one of the "experts" who prepared a report in this matter, that "the stress and disruptiveness on a child caused by divorce and long distance separation is difficult to predict and difficult to quantify," as supporting the conclusion that the Father carried his burden. See § 61.13001(8), Fla. Stat. (2007). By this standard, we dare say, no relocation would ever be permitted.