SHEPHERD, J.,
concurring.
I write only to state that one could not imagine a closer case on the facts. It is undisputed the child’s mother and father both are excellent parents. They are cooperative with each other and caring of the child. Although the mother is the primary residential parent under the August 2005 paternity order, the mother and father have exercised what appears to be a near seamless fífty-fífty time sharing arrangement, despite the fact each parent has married since they had the child together and each has a new family — the father another daughter, who is five-years old, and the mother two other children, ages ten months and three-years old. The child has a mild case of attention deficit hyperactivity disorder (ADHD), which affects her ability to study. The child’s stepmother spends early evenings helping or tutoring the child when she is at her father’s home. The child’s stepfather is equally accepting and supportive of the child when she is at the mother’s home. The child gets along well with her half-siblings. The mother and father both have extended families in South Florida, and both are involved in the child’s life. The child does well in school despite her ADHD, for which the school also provides some assistance.
All was going well in the child’s ten-year-old idyllic South Florida life until the United States Coast Guard issued standard travel orders last spring to the stepfather, an eight-year enlisted member of the Guard, transferring him from his station here in Miami-Dade County to the Alameda Naval Weapons Station near Concord, California. Having already extended his Miami-Dade County assignment once to remain in South Florida, the stepfather was required to honor the most recent orders. The child’s mother, the stepfather, and their two children are presently residing in a two-story home on the Alameda naval base. The family has a room awaiting the child in the house. The mother has moved for permission for the child to join them in Alameda. The mother has promised to fly the child back to Florida at her family’s expense for summer and other extended visitation with the father.
*756 It is agreed that the homes — actually two homes — in which the child has resided in Miami-Dade County are equally commodious and comfortable. The child has had her own room in each house, and would continue to do so in the father’s home if the child does not relocate. The child has attended an “A” school in Miami-Dade County and will attend an “A” school a short distance from home in Concord. The ADHD, mild as it is, presumably is as treatable in California as it is in Florida. As the mother’s counsel conceded at oral argument, the only substantial distinguishing factor between the life the child will have in California as compared to Miami-Dade County, is that the mother and her husband have decided she will not be working in California. According to the mother, she, therefore, will be more available to the child, including working with the child on homework issues related to her ADHD.
Neither we nor the father have located a case in which an appellate court has reversed a relocation order on facts nearly this close. Vivian v. Schembari, 966 So.2d 492 (Fla. 4th DCA 2007), cited by the father, was an affirmance of an order denying a primary residential parent’s efforts to relocate when her new husband’s job was relocated. In Chapman v. Prevatt, 845 So.2d 976 (Fla. 4th DCA 2003), a case like the present one involving two equally good and devoted parents, both remarried and a military stepfather ordered to Colorado, the court of appeal reversed and remanded the relocation order, not because one location was better than the other, but rather because there was no evidence supporting the annual rotation of custody between both parents that had been ordered by the trial court. All other cases cited by the father, or which we have located, are cases involving clearly unequal parents. See, e.g., Orta v. Suarez, 66 So.3d 988 (Fla. 3d DCA 2011); Cecemski v. Cecemski, 954 So.2d 1227 (Fla. 2d DCA 2007).
On the standard of review we must apply, we are not at liberty to reverse the decision of the trial court unless the decision of the court was “arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court.” Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). Applying this standard of review, I believe we would be required to affirm the decision of the trial court whether the trial court had granted or denied the relocation. Only time will tell whether the decision of the trial court actually was in the best interests of the child. That is probably as good a definition of lack of abuse of discretion as is available to us in this case.