WALLACE, Judge.
M.G. (the Father) filed a petition to determine the paternity of two minor children. A.V. (the Mother) appeals the trial court’s final judgment of paternity that granted her primary residential responsibility over the children but required that she reside with the children in Sarasota, Florida. We conclude that the reasons offered by the trial court for imposing the residential restriction are not supported by competent, substantial evidence. Accordingly, we reverse the final judgment in part and remand for further proceedings consistent with this opinion.
I. BACKGROUND
The parties were never married but lived together in Sarasota between March 1995 and November 2005. They had two sons: B.T.G., who was born in 1996, and B.S.G., who was born in 2001. The parties’ relationship deteriorated after the second child was born, and their attempts to reconcile were unsuccessful. In November 2005, the Mother relocated from Sarasota to the Seattle, Washington, area, where her immediate relatives resided. After the relocation, the children visited the Father in Sarasota frequently, but the Father never visited the children in the Seattle area.
In December 2006, the Father filed a petition for determination of paternity asking the court, among other things, to order shared parental responsibility for the children and to designate the Father as the primary residential parent. In his petition, the Father alleged that “the children should remain living in the state of Florida.” The Mother filed a counterpetition requesting an order for shared parental responsibility and that she be designated as the primary residential parent.
At the final hearing on the parties’ petitions, the trial court heard testimony from only the Father, the Mother, and one of the Father’s employees. Neither parent offered any testimony from the children’s relatives, teachers, or other knowledgeable persons concerning the impact of the relocation to the Seattle area on the children or on their relationship with the Father. Moreover, neither parent offered the testimony of a psychologist or other expert witness on these issues. No travel agent testified concerning the cost of air travel between Seattle and Sarasota or how that cost might be minimized. Similarly, no accountants or other financial experts testified concerning the ability of the parties to afford the travel expenses that would be necessary for the Father to see the children if they continued to reside in the Seattle area.
Based upon the evidence that was presented, the trial court entered a final judgment of paternity including a finding that the Mother had “unnecessarily removed the children to the State of Washington.” In the final judgment, the trial court designated the Mother as the children’s primary residential parent but required that the children were to return to and remain in Sarasota. The trial court based its decision to impose the residential restriction on two findings of fact. First, the trial court found that the Father could not con *1142 tinue to afford the expense of transporting the children to Sarasota for visits with him. Second, the trial court concluded that any long-distance visitation schedule was “hopelessly inadequate” to preserve the close relationship that existed between the Father and the children. The trial court noted that the Mother would return to Sarasota if the children were ordered to reside there and reserved jurisdiction to reconsider the issue of primary residential responsibility if the Mother did not return to Sarasota. In the final judgment, the trial court also reserved jurisdiction to consider and determine the issues of the Father’s shared parenting schedule, child support, and attorney’s fees and costs.
II. DISCUSSION
On appeal, the Mother’s only challenge to the final judgment is to the residential restriction. The Mother argues that the trial court abused its discretion in requiring her to exercise primary residential responsibility over the children in Sarasota because the trial court’s findings of fact were not supported by competent, substantial evidence. In particular, the Mother contends that no competent, substantial evidence supports the trial court’s findings that (1) the Father cannot afford the cost of transporting the children between the Seattle area and Sarasota and (2) any proposed visitation schedule would be inadequate to preserve the close relationship between the Father and the children. We address each of the Mother’s contentions separately.

A. The Cost of Transportation

First, the Mother argues that the Father never testified that he could not afford the transportation costs. The trial court found that the Father “ha[d] spent over $20,000 in long-distance visitation expenses since the children were removed and cannot afford to continue to pay such sums in the future. This expense is an impediment to the [parents’] ability to facilitate a continuing long-distance parent-child relationship.” The $20,000 figure mentioned by the trial court covered transportation costs for the period from November 2005 through August 2007. The evidence suggested that if the children were to continue to travel between the Seattle area and Sarasota for visitation with the Father, the expenses associated with the travel expense would be less because the younger child had become old enough to travel unaccompanied by an adult. In addition, the Mother testified that she was willing to pay part of the travel costs. Therefore, the estimated cost to the Father for transportation was not accurate.
At the final hearing, the evidence established that the Father was a self-employed businessman involved in the automotive industry. Although the Father complained that the costs for the children’s transportation were “outrageous” and “stupidly expensive,” he never testified that the payment of those costs was beyond his means. Similarly, the Father makes no argument on this appeal that he could not afford to pay the transportation expenses. Thus the competent, substantial evidence in the record does not support the trial court’s finding that the Father could not afford the cost of the children’s transportation for visitation.

B. The Relationship between the Father and the Children

The Mother also contends that the record does not support the trial court’s finding that the relocation would limit the Father’s relationship with the children or that future visitation would not preserve his close relationship with them. In response, the Father claims that the children’s relocation to the Seattle area *1143 would prohibit “any similar ability to duplicate what had existed as far as father and son involvement.” However, the question of whether substitute visitation arrangements are adequate to foster a continuing meaningful relationship between the child and the nonrelocating parent is “not whether the same degree of frequent and continuing contact would be maintained.” Wilson v. Wilson, 827 So.2d 401, 403 (Fla. 2d DCA 2002) (construing section 61.13(2)(d), the prior version of the current parental relocation statute). Instead, the proper standard for evaluating the proposed substitute visitation is whether the substitute visitation is “sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent.” § 61.13001(7)(c), Fla. Stat. (2006); see Fredman v. Fredman, 917 So.2d 1038, 1041 (Fla. 2d DCA 2006) (construing section 61.13(2)(d)).
The record does not support the conclusion that the proposed substitute visitation schedule would be inadequate to foster a continuing meaningful relationship between the Father and the children. The trial court found that “the desirability of maintaining the physical location of primary care [in the Seattle area] is outweighed by the limitations that this has placed on the children’s close relationship with their father.” The trial court further found that “a [long-distance visitation] schedule is hopelessly inadequate to preserving the children’s close relationship with their father, which included day-today shared experiences and participation physically and emotionally in the life of each child.” But at the final hearing, the Father testified that his relationship with the children was “more concentrated and ... better” when they visited for an entire summer in 2007 and during extended periods in 2006 for Thanksgiving and Christmas. The visitation schedule proposed by the Mother would have provided the Father with the same type of contact with the children that he testified had led to an improved parent-child relationship. No one testified that the visitation schedule proposed by the Mother would be insufficient to foster a continuing meaningful relationship between the Father and the children. Thus the trial court’s finding regarding the impact of the Mother’s proposed visitation schedule on the relationship between the Father and the children is not supported by competent, substantial evidence.

C. The Statutory Relocation Factors

On remand, the trial court will have to revisit the issue of whether to require that the children reside in Sarasota. We note that this is not a relocation case in the strict sense because there was no court order in place when the Mother left Sarasota and moved to the Seattle area with the children. Nevertheless, the trial court must consider the relocation factors enumerated in section 61.13001(7) as part of its evaluation of “all factors affecting the welfare and interests of the child” as required by section 61.13(3). See Decker v. Lyle, 848 So.2d 501, 503 (Fla. 2d DCA 2003); Mian v. Mian, 775 So.2d 357, 359 (Fla. 2d DCA 2000). Accordingly, on remand the trial court must consider the statutory parental relocation factors as part of its reevaluation of the best interests of the children.[1]
III. CONCLUSION
The trial court’s decision to grant the Mother primary residential responsibility over the children but effectively require *1144 the Mother to live in Sarasota for the duration of the children’s minority is not supported by competent, substantial evidence. Consequently, we reverse the final judgment to the extent that it adjudicated the issue of primary residential responsibility for the children but required the Mother to exercise her parental responsibility in Sarasota. See Adair v. Adair, 720 So.2d 316, 317 (Fla. 4th DCA 1998) (“Despite a conflict in the evidence, an appellate court will not disturb the trial court’s custody decision unless there is no substantial competent evidence to support that decision.”). In all other respects, we affirm the final judgment.
In addition, we remand this case to the trial court for further proceedings consistent with this opinion. On remand, the trial court may take such additional evidence as it may deem appropriate to address the issues of primary residential responsibility for the children and relocation. Based upon the result of its determination of these issues, the trial court may also find it necessary to revisit the issues of child support and visitation.
Affirmed in part, reversed in part, and remanded with instructions.
CASANUEVA and LaROSE, JJ., Concur.

. The trial court entered the final judgment on December 18, 2007. Therefore, section 61.13001, the current version of the parental relocation statute, applies to the determination of the relocation issue. See § 61.13001(10(a)(2).