GRIFFIN, J.
Stuart Wraight [“Husband”], pro se, appeals a final judgment of dissolution of marriage that, among other things, granted Kerry Wraight’s [“Wife”] petition to relocate to the United Kingdom with the minor child. We do not find that the trial court misapplied the law and, accordingly, we affirm the relocation decision. We agree that the court erred in equitably dividing Husband’s non-marital pension.[1]
The parties were married in the United Kingdom (“U.K.”) in February 1999. In April 2000, the parties emigrated from the U.K. to Canada, where they resided for seven years. Both parties worked in Canada earning roughly the same amount of money. Their only child, a daughter, was born in 2003, making her around six years old at the time the parties filed for divorce.
In 2007, Husband was offered a job with the City of Orlando through a special visa, and the parties moved to Florida. Wife, however, was unable to work in the United States because of the type of visa she had. In July 2008, Wife scheduled a trip to the U.K. with the minor child to visit Wife’s family. A week after Wife returned, Husband arrived at work to find an e-mail from Wife announcing that she had taken the minor child and gone back to the U.K.
Husband sought assistance from local law enforcement agencies and the Florida courts. He filed divorce proceedings with an emergency motion to return the minor child and to award temporary custody of the minor child to Husband. Wife filed divorce and custody proceedings in the U.K.[2] Husband’s motion was granted in *141 part in that the immediate return of the minor child was ordered, but the other requested relief was denied until a status hearing could be conducted. Wife was served with the order but refused to return with the minor child and did not attend the status hearing. The trial court advised Husband that the U.K. proceedings had to be withdrawn before the Florida court could proceed.
Because Wife refused to withdraw the divorce and custody proceedings in the U.K., Husband had to file proceedings through the Hague Convention. It took Husband four months to obtain an order requiring Wife to return the child to Florida.
Promptly upon her return to Florida, Wife sought permission from the trial court for temporary relocation back to the U.K. with the minor child, pending the final hearing. The trial court granted Wife’s request.
The final hearing was held on April 30, 2010, and the final judgment was rendered in August 2010. The final judgment awarded Wife primary residential custody of the minor child and allowed permanent relocation to the U.K. Husband was awarded visitation. The final judgment also awarded child support to Wife and equitably distributed the parties’ remaining marital assets and debts.
In the final judgment, the trial court made detailed findings based on the statutory factors relevant to the dissolution under section 61.13, Florida Statutes, and the factors relevant to relocation under section 61.13001, Florida Statutes. Husband complains that these findings were erroneous and that the custody and relocation decisions were also erroneous. So long as these findings are supported by evidence, however, we may not disturb the trial court’s decision, even if we might disagree with it. In opposing Wife’s custody of the child and relocation, for example, Husband asserts that the record shows an act of a calculated pre-planned child abduction by Wife further aggravated by her refusal to return until finally forced to do so by the High Court, at great difficulty and expense to himself as father of the abducted child. The trial court, however, decided to excuse Wife’s conduct, finding that she had merely relied on bad legal advice.
Husband also argues that the trial court failed to apply the correct standards in evaluating the issue of relocation. Section 61.13001, Florida Statutes (2006), titled “Parental relocation with a child,” establishes the procedures involved in the relocation of a child, whether relocation is sought after agreement between the parties or alternatively contested by one party. In the case of a contested relocation, the Legislature has declared that “[n]o presumption shall arise in favor of or against a request to relocate with the child when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact, access, and time-sharing with the nonrelo-cating parent or other person.” § 61.13001(7), Fla. Stat. (2006). Instead, section 61.13001(8), states:
The parent or other person wishing to relocate has the burden of proof if an objection is filed and must then initiate a proceeding seeking court permission for relocation. The initial burden is on the parent or person wishing to relocate to prove by a preponderance of the evidence that relocation is in the best interest of the child. If that burden of proof is met, the burden shifts to the nonrelo-cating parent or other person to show by a preponderance of the evidence that the *142 proposed relocation is not in the best interest of the child.
In addition to the burden that the parties must meet, the statute outlines multiple factors a trial court must consider before reaching a decision on a parent’s request for permanent relocation. § 61.13001(7), Fla. Stat. (2006). Here, the trial court considered the factors under sections 61.13(8) and 61.13001(7) and made written findings concerning those factors. Husband takes issue with the trial court’s findings, but this Court cannot reweigh the evidence considered by the trial court. We can only decide whether substantial competent evidence exists to support the trial court’s decision. See Berrebbi v. Clarke, 870 So.2d 172, 173 (Fla. 2d DCA 2004); Kuntz v. Kuntz, 780 So.2d 1022 (Fla. 4th DCA 2001). Here, there is some evidence to support the trial court’s findings.
Husband additionally argues that under section 61.13001(6)(c), it was error for the trial court to give weight to the child’s temporary relocation as a factor in reaching its final decision. Section 61.13001(6)(c), Florida Statutes (2007), provides:
If the court has issued a temporary order authorizing a party seeking to relocate or move a child before a final judgment is rendered, the court may not give any weight to the temporary relocation as a factor in reaching its final decision.
Husband asserts that the following findings from the final judgment suggest that the trial court wrongly weighed the temporary relocation in reaching its final relocation decision:
The Wife testified that the child had been performing well and has adjusted and appears to be happy in the Worth Primary school in the United Kingdom. The minor child has been relocated to the United Kingdom and according to the testimony of the parties, has adjusted well. The Court finds another relocation of the minor child not to be in her best interests.
The Wife testified that she is settled and has adapted well to relocation in the United Kingdom, as has the child. She further testified she has become involved in a serious relationship and while not expediting a new marriage, feels committed to same. The Wife testified a healthy and positive relationship exists between her significant other (David P.) and the minor child.
The child now resides in the United Kingdom where she is close to immediate and/or extended family members. The Wife testified she has adapted well in her present school, and has become involved in horseback riding as well as other activities, involving both families (of the Husband and Wife).
To once again relocate the minor child and require her to acclimate to another new school and friends is not in her best interests.
The Wife testified to a new and promising relationship with David P. and a positive relationship between him and the minor child. The parties are also able to connect with close family members on a regular basis.
There is no case law that interprets section 61.13001(6)(c), nor is there any legislative history that would explain the inclusion of subsection (6)(c). Oddly, section 61.13001(6)(c) expressly requires the court, in making a temporary relocation decision, to examine evidence and weigh the same factors that are pertinent to a final relocation decision. Perhaps this provision is designed to assure that the facts and issues pertinent to a final relocation decision will be fully examined de novo at the final hearing. This statute may also be designed to temper the unfairness often perceived by the objecting parent where the *143 custodial parent is allowed to temporarily relocate with the child, and then use evidence of the success with the temporary relocation to gain an unfair advantage over the objecting parent. It seems inevitable, even necessary, for the court to take into account the events of a temporary relocation (good and bad) in evaluating and applying the statutory factors. After examining the record and the appealed order, we conclude that the limitations in section 61.13001(6)(c) were not violated.
We reverse on the issue of the equitable distribution of Husband’s non-marital pension. Prior to the parties’ marriage, Husband worked for the U.K. government where he earned a pension. After the parties moved to Canada, Husband transferred the money to an annuity retirement account and made Wife the beneficiary. At the final hearing below, Wife’s counsel argued that, in doing so, Husband created an interspousal gift of his non-marital U.K. pension.
Wife relied on Mercurio v. Urban, 552 So.2d 236 (Fla. 4th DCA 1989). In Mercu-rio, the parties owned a stock certificate as tenants in common. Both parties’ names appeared on the stock certificate. The Fourth District concluded that there was a presumption of a gift since the parties each owned one-half of the stock as tenants in common. The court then concluded that Mercurio did not meet his burden of rebutting the presumption of a gift.
Here, Husband argues that the court’s reliance on Mercurio was mistaken because making his Wife the beneficiary did not rise to the level of a gift of a share of the annuity contract. A somewhat similar case is Rasmussen v. Rasmussen, 909 So.2d 969 (Fla. 2d DCA 2005). There, the husband signed a note that was notarized which gave to his wife all of his property “in the event of death or separation.” Id. at 970. The trial court found that the note had the effect of making a gift to the wife of all of the husband’s nonmarital assets. The Second District discussed the principles used for determining whether there has been a valid gift, and concluded that the note did not make a valid gift of the husband’s property to the wife because the wife’s rights did not accrue until the husband’s death or separation. Id. at 970-71. Likewise, in this case, Wife has no right to the annuity unless or until Husband passes away. Moreover, Husband has the right to change the beneficiary. The trial court erred in treating the U.K. pension as a marital asset subject to equitable distribution. Luszcz v. Lavoie, 787 So.2d 245, 248 (Fla. 2d DCA 2001).
Finally, Husband asserts that the trial court erred in failing to award him $4,000 previously awarded by the High Court. Specifically, the order awarded:
B. (8) She will irrevocably agree that, if the Plaintiff pays to her the sum of U.S. $4,000 in accordance with his undertakings at A(3), she will forthwith upon sale of the jointly owned property in Canada as set out at B(ll) repay to him from her share of proceeds of sale the sum of U.S. $4,000; this undertaking shall endure without limit of time.
Husband asserts in his initial brief that he paid the sum of $4,000 to Wife, in accordance with the High Court’s Order, and that the final judgment equitably divides the proceeds from the sale of the condominium in Canada, but does not deduct the $4,000 from Wife’s share of the proceeds. On remand, this credit needs to be determined by the trial court.
AFFIRMED in part; REVERSED in part.
ORFINGER, C.J. and COHEN, J., concur.

. Husband has also raised on appeal the trial court’s findings concerning the parties’ respective incomes and the failure to impute income to Wife, but Husband has not demonstrated reversible error on these issues.

. Husband’s brief asserts that, under U.K. law, Wife had to reside in the U.K. for at least *141 six months before filing divorce and custody proceedings.