PITTMAN, Judge.
Daniel L. Bates (“the father”) appeals from a judgment of the Lauderdale Circuit Court granting Tiffany Bates (“the mother”) permission to relocate from Killen, Alabama, to Chandler, Arizona, with the parties’ two minor children. We affirm.

Factual and Procedural Background

The parties were married in 1994. The father is in the United States Marine Corps; during the marriage, the parties lived together at Marine bases in Oklahoma, Florida, and North Carolina. In February 2006, while the mother and children were living in North Carolina and the father was deployed to Iraq, a Florida attorney filed on the father’s behalf a complaint in the Circuit Court of Okaloo-sa County, Florida (the place of the father’s legal residence at that time), seeking a dissolution of the parties’ marriage. The parties reached a settlement agreement resolving all issues; that agreement stated that Florida law governed the validity, construction, interpretation, and effect of its provisions. The settlement agreement incorporated a separate “shared-parenting agreement” executed by the parties. The shared-parenting agreement designated the mother as the “primary residential parent” and the father as the “secondary residential parent” with rights of “access to and timesharing with” the children according to a standard schedule, or as otherwise agreed upon by the parties by addendum. The parties executed an addendum agreeing “to set visitation and timesharing conducive to their schedules” or, in the event they could not agree, agreeing to be bound by the standard schedule. Further, the parties agreed that, because they did not reside in the same geographical area (defined as being within 100 miles of each other), they would share equally “in the transportation or transportation expenses associated [with the] Summer and December Holiday timesharing, or two round trips per year,” and that the father would be responsible “for the transportation or transportation expenses associated with all other timesharing.” The shared-parenting agreement also provided that “[e]ach parent shall give the other parent written notice at least ninety (90) days in advance of any relocation outside the parties’ same geographic area.”
The father remarried six months after the divorce. His wife (“the stepmother”) was, at the time of the trial of this case, expecting her first child. After the father completed his tour of duty in Iraq, he was stationed in Washington, D.C., until 2011. *838 The mother and children moved to Killen, Alabama, where the children’s maternal grandmother and a maternal uncle live. The mother remarried in 2009. The father, who had purchased a two-bedroom, one-bathroom house in Florence, Alabama,[1] usually drove or flew to Alabama to exercise his visitation with the children.
In February 2011, the mother’s husband (“the stepfather”) accepted a job with Intel Corporation (“Intel”) in Chandler, Arizona, a suburb of Phoenix. On February 21, 2011, the mother sent the father a certified letter stating that she and the stepfather intended to relocate to Chandler with the children; that the stepfather would begin a new job there on April 4, 2011; that she and the children would join the stepfather as soon as their house in Killen had been sold; that she would inform the father of her new address as soon as possible; and that the mobile telephone numbers for her and the children remained the same. On March 1, 2011, the father sent the mother a certified letter stating that, in order to be near the children, he had accepted a military assignment to the Marine Corps base in Albany, Georgia, and would be moving on June 1, 2011.
On April 13, 2011, the father filed in the Lauderdale Circuit Court a petition to register and enforce the parties’ Florida judgment of dissolution, an objection to the mother’s proposed relocation, and a petition to modify custody. The father also moved for a temporary restraining order, seeking to prevent the mother from relocating the children during the pendency of the action. The mother answered the father’s petition and filed an unverified coun-terpetition to relocate, attaching a letter from Intel that extended an offer of employment to the stepfather. Later, the mother filed an unverified amendment to her counterpetition to relocate, adding the children’s proposed new address in Arizona. Following a hearing, the trial court entered an order requiring the children to remain in Alabama pending a final hearing.
Before the trial of this case on July 18, 2011, the parties stipulated that the substantive law of Florida applied to the issues before the trial court, and the mother filed a verification of her two prior unverified pleadings. Three witnesses testified at trial: the mother, the stepfather, and the father. The testimony of the stepmother was taken by a telephonic deposition several days later.
The mother testified at trial that she had always been the primary caregiver for the parties’ children, a daughter who was then six years old and a son who was then nine years old. The evidence was in conflict with respect to how often the father had exercised visitation with the children between 2006 and 2011. The mother said that the father had come to Alabama for weekend visits with the children every four to six weeks. The father claimed to have visited the children every two or three weeks. The mother denied that the proposed move to Arizona was for the purpose of interfering with the father’s relationship with the children. She testified that, although the judgment of dissolution had ordered the father to pay $130 per month toward her health-insurance costs, she had foregone that support so that the father could have more “travel money.” Each party agreed that the other was a good parent who loved the children and had a good relationship with them and that the stepparents also had good relationships *839 with the children. The mother testified that Chandler has a year-round school system, with three two-week breaks — in the fall, in December, and in the spring — and a six-week break in the summer. She acknowledged that none of the parents or stepparents has any relatives in Arizona. She said that she and the stepfather each had one parent and siblings in Lauderdale County; that the father had a brother in Birmingham and parents in Benton, Tennessee, a four-hour drive from Killen; and that the stepmother’s relatives lived in California. The mother responded affirmatively to a question whether she would “agree to modify the visitation schedule and the cost of the transportation in response to [her] proposed move to Arizona.”
The father acknowledged that, until the mother had proposed to move to Arizona, she had willingly accommodated his work schedule and travel plans and had fostered his relationship with the children. The father stated that, after the divorce, he had requested base assignments to locations that would facilitate his visitation with the children. He said that he had turned down a career-enhancing assignment in Turkey because it would have prevented him from seeing the children. He explained that, after returning from Iraq, he had had two consecutive assignments to the Washington, D.C., area and that, although he could have requested a duty station in North Carolina for the second assignment, he had intentionally chosen to remain in the Washington, D.C., area because, he said, he could arrange direct airline flights to Huntsville from one of three airports in the Washington, D.C., area, whereas the airport closest to the North Carolina duty station offered no direct flights to Huntsville. The father stated that he would retire from the Marine Corps in January 2014 and that he had requested an assignment to the Marine Corps base in Albany, Georgia, as his last duty station before retirement so that he could be close to the children. He stated that there was a Marine Corps base in Arizona but that, by the time he had learned of the mother’s proposed relocation to Arizona, it had been too late to change his assignment to Albany. After his retirement, the father said, he and the stepmother planned to live in Lauderdale County near the children. To that end, the father and stepmother had purchased a three-bedroom, three-and-one-half-bathroom lake house in Rogersville, Alabama, for $447,000 in September 2010. The father stated that, although he had previously owned a smaller house in Florence, he thought that, as the children grew older, they would need separate rooms and a larger yard. The father testified that, when he had been deciding whether to buy the lake house, he had asked the mother whether she and the stepfather had planned to move away from Lauderdale County, and he stated that the mother had replied that, if they moved, it would not be any farther than ■ Huntsville. The father testified that in December 2010, three months after he had purchased the lake house, the mother informed him in a telephone conversation that the stepfather was considering a job in Arizona. According to the mother, the father stated that he was opposed to the move because he and the stepmother had spent their life savings on the lake house for retirement and, with the current housing market, “they were not able to sell it ..., and that was causing a problem for them.” The mother acknowledged that the father had informed her during the same telephone conversation that he was going to be moving to Georgia so that he could, he thought, be close to the children.
The stepfather testified that he had previously worked for Intel in Chandler for four years but that he had left Arizona in *840 2005 and returned to Alabama to continue his education. After receiving a degree in management technology from Athens State University, he began working for a camera-systems contractor at the International Paper (“IP”) plant in Courtland. His employer’s 3-year contract with IP had recently been renewed for 1 year, and, according to the stepfather, the renewal was subject to being canceled in 60 days. The stepfather testified that he had been looking for other employment since 2008 because he viewed his current employment as not being secure. He said that he had originally thought that he would find work at Redstone Arsenal in Huntsville, but after seeing that candidates with master’s degrees had been unsuccessful in obtaining employment at that facility, he had broadened his search. The stepfather submitted documentary evidence demonstrating his efforts to obtain employment in north Alabama, which efforts had been unsuccessful.
The stepfather said that he had accepted the job at Intel because the salary and benefits were better than those he had in his current position, he knew the working conditions were good, and he thought Chandler would be a good place for the mother and children to live. The stepfather said that he and the mother had purchased a house in a nice neighborhood in Chandler. The house has a swimming pool, and the mortgage payment is lower than the amount he and the mother had been paying on their house in Killen. The stepfather explained that, after consulting an elementary-school rating site on the Internet, he had determined that the schools in Chandler were rated more favorably than those in Lauderdale County. Because the mother has a degree in elementary education, the stepfather had also checked with the Chandler Unified School District and discovered that there were elementary-school teaching positions available. The stepfather had also done a comparison of the crime rates in Chandler and Florence (the only city in Lauderdale County that was included in the comparison); he determined that Chandler had a higher rate of property crime but a lower rate of violent crime than Florence.
The stepfather testified that he thought the cost of living in Chandler was no higher than the cost of living in Lauderdale County. He said that he had been earning an annual salary of $54,374 in Alabama. The stepfather’s base pay in Arizona is $56,400. In addition, he said, Intel offered good health insurance and a retirement-savings plan, and he would be eligible for bonuses, stock options, and a two-month paid sabbatical after seven years of employment. The stepfather concluded that his employment package amounted to annual compensation of $75,000. The father countered the stepfather’s cost-of-living testimony with documentary evidence indicating that the cost of living in Chandler is 25.3% higher than the cost of living in Lauderdale County.
The stepmother is a pediatric-trauma nurse. She testified that if the father were awarded custody of the children she would care for the children during the week at the lake house in Rogersville, and the father would drive from Albany to Rogersville to visit on the weekends. She testified that she and the father opposed the relocation because they wanted the child she was expecting to have a relationship with his or her half siblings.
At the close of all the evidence, the father moved for “a judgment as a matter of law,”[2] arguing that the mother’s coun- *841 terpetition and amended counterpetition to relocate were insufficient under Florida law because they were not verified, as required by § 61.13001(3)(a), Fla. Stat. Ann. (2009).[3] The mother filed a response in opposition to the father’s motion, arguing that the father had waived the verification requirement of § 61.13001(3)(a) by failing to raise it, either in a responsive pleading to her counterpetition or at the close of her evidentiary presentation at trial. The trial court denied the father’s motion without stating' the basis for its decision.
On August 15, 2011, the trial court entered a judgment denying the father’s petition to modify custody and determining (a) that the mother had substantially complied with all the notice requirements regarding the proposed relocation of the minor children; (b) that it was in the best interest of the minor children that the mother continue as the primary residential parent and be allowed to relocate the children to Chandler, Arizona; (c) that visitation with the children would be as agreed upon by the parties or, in the event that the parties could not agree as to visitation, that the parties would abide by the provisions of the shared-parenting agreement included in the judgment of dissolution; and (d) that “all other terms of the final judgment of dissolution of marriage ... that are not specifically modified herein shall remain in full force and effect.” Following the denial of his postjudgment motion, the father timely appealed.

Standard of Review

As we note herein, our review of the trial court’s judgment is governed by the substantive law of Florida, not Alabama. However, standards of appellate review are procedural in nature and the law of the forum controls. See, e.g., Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 438, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (holding that in a diversity case a federal district court must apply the state substantive rule protecting against an excessive jury award of compensatory damages, but appeal from that decision is governed by the traditional federal standard of review). Accord Maxwell v. Olsen, 468 P.2d 48, 52-53 (Alaska 1970); Schlessinger v. Holland America, N.V., 120 Cal.App.4th 552, 558 n. 3, 16 Cal.Rptr.3d 5, 10 n. 3 (2004); and Milstead v. Diamond M Offshore, Inc., 676 So.2d 89, 96 (La.1996). See generally Restatement (Second) of Conflict of Laws § 127, Comment a.9. (1971) (listing “proceedings on appeal and other proceedings to review [a] judgment” as procedural matters that are governed by the law of the forum).
Florida substantive law concerning parental relocation is found in § 61.13001, Fla. Stat. Ann. (2006), and the Florida decisions interpreting that statute.
“In the case of a contested relocation, the [Florida] Legislature has stated that *842 ‘[n]o presumption shall arise in favor of or against a request to relocate with the child when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact, access, and time-sharing with the nonrelocating parent or other person.’ § 61.18001(7), Fla. Stat. (2006). Instead, section 61.13001(8) states:
. The initial burden is on the parent or person wishing to relocate to prove by a preponderance of the evidence that relocation is in the best interest of the child. If that burden of proof is met, the burden shifts to the nonrelocating parent or other person to show by a preponderance of the evidence that the proposed relocation is not in the best interest of the child.’
“In addition to the burden that the parties must meet, [§ 61.13001(7)(a)-(k) ] outlines several factors a trial court must consider before reaching a decision on a parent’s request for permanent relocation.”
Arthur v. Arthur, 54 So.3d 454, 456 (Fla. 2010).
“[Alabama’s Parent-Child Relationship Protection] Act does not require the trial court to make specific findings of fact in its judgment, see Clements v. Clements, 906 So.2d 952, 957 (Ala.Civ.App.2005), and, in the absence of specific findings of fact, ‘ “this court must assume that the trial court made those findings necessary to support its judgment.” ’ Id. (quoting Steed v. Steed, 877 So.2d 602, 603 (Ala.Civ.App.2003)).”
Pepper v. Pepper, 65 So.3d 421, 426 (Ala.Civ.App.2010). Accord Cecemski v. Cecemski, 954 So.2d 1227, 1228-29 (Fla.Dist.Ct.App.2007) (holding that the record must reflect that the trial court considered the statutory factors when considering a request for relocation but that the trial court is not required to make specific findings regarding the factors).
“[W]here a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness. See Scholl v. Parsons, [655 So.2d 1060 (Ala.Civ.App.1995)]. ‘The presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.’ Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and to substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000); see also Ex parte Perkins, 646 So.2d 46 (Ala.1994).”
Clements v. Clements, 906 So.2d 952, 959 (Ala.Civ.App.2005). Accord Wraight v. Wraight, 71 So.3d 139, 142 (Fla.Dist.Ct.App.2011) (stating that a Florida appellate court “cannot reweigh the evidence considered by the trial court. [A reviewing court] can only decide whether substantial competent evidence exists to support the trial court’s decision.”).

Discussion

I.
Citing Raulerson v. Wright, 60 So.3d 487, 490 (Fla.Dist.Ct.App.2011), the father argues that the trial court erred in permitting the mother’s relocation because her counterpetition and amended counter-petition were not verified at the time of filing, thereby, he says, “failing] to comply with the threshold requirement [of § 61.13001, Fla. Stat. Ann.,] of properly filing a sworn petition with the trial court.” Section 61.13001 provides, in pertinent part:
“(3) Petition to relocate. — Unless an agreement has been entered as described in subsection (2), a parent or *843 other person seeking relocation must file a petition to relocate and serve it upon the other parent, and every other person entitled to access to or time-sharing with the child. The pleadings must be in accordance with this section:
“(a) The petition to relocate must be signed under oath or affirmation under penalty of perjury and include:
“1. A description of the location of the intended new residence, including the state, city, and specific physical address, if known.
“2. The mailing address of the intended new residence, if not the same as the physical address, if known.
“3. The home telephone number of the intended new residence, if known.
“4. The date of the intended move or proposed relocation.
“5. A detailed statement of the specific reasons for the proposed relocation. If one of the reasons is based upon a job offer that has been reduced to writing, the written job offer must be attached to the petition.
“6. A proposal for the revised postrelocation schedule for access and time-sharing together with a proposal for the postrelocation transportation arrangements necessary to effectuate time-sharing with the child. Absent the existence of a current, valid order abating, terminating, or restricting access or time-sharing or other good cause predating the petition, failure to comply with this provision renders the petition to relocate legally insufficient.
“7. Substantially the following statement, in all capital letters and in the same size type, or larger, as the type in the remainder of the petition:
“ ‘A RESPONSE TO THE PETITION OBJECTING TO RELOCATION MUST BE MADE IN WRITING, FILED WITH THE COURT, AND SERVED ON THE PARENT OR OTHER PERSON SEEKING TO RELOCATE WITHIN 20 DAYS AFTER SERVICE OF THIS PETITION TO RELOCATE. IF YOU FAIL TO TIMELY OBJECT TO THE RELOCATION, THE RELOCATION WILL BE ALLOWED, UNLESS IT IS NOT IN THE BEST INTERESTS OF THE CHILD, WITHOUT FURTHER NOTICE AND WITHOUT A HEARING.’”
(Emphasis added.)
In Raulerson, the parties were scheduled to appear at a child-support-modification hearing. The day before the hearing, the mother orally notified the father that she intended to relocate with the parties’ minor child. The mother, 10 days after the hearing, hand-delivered to the father an unsworn “Notice of Intent to Relocate With Child,” and she relocated the following day. The father moved to enjoin the relocation, arguing that the mother had not complied with § 61.13001(3)(a). At a subsequent hearing, the mother acknowledged that she did not have a written agreement with the father to relocate, nor had she filed a petition to relocate and received court approval to relocate. The trial court granted the mother temporary permission to relocate, finding that she had “substantially complied” with statutory requirements. The Florida appellate court reversed that judgment, stating:
“Section 61.13001 delineates the requirements a primary residential parent must follow before relocating with a minor child who is the subject of an order *844 determining the child’s time-sharing, residential care, kinship, or custody. Unless there is a valid agreement to the child’s relocation under section 61.13001(2), the primary residential parent must file a petition to relocate and receive permission from the circuit court to relocate. See § 61.13001(3). This petition must be filed under oath, contain seven specific items of information, and be served on every other person entitled to access or time-sharing with the child. § 61.13001(3)....
[[Image here]]
“_ The Mother’s efforts in this case were inadequate because she failed to comply with the threshold requirement of properly filing a sworn petition with the trial court.... Rather, she merely hand-delivered to the Father an unsworn ‘Notice of Intent to Relocate With Child’ one day before relocating. The Mother did not file any form of documentation with the court, despite the statute’s explicit directive to file a sworn petition. Thus, she failed to comply with the statute and should not have been granted permission to relocate.”
60 So.3d at 489-90 (emphasis added).
It is evident from a review of 61.13001(3)(a) and Raulerson that Florida’s parental-relocation statute establishes a procedural mechanism for litigating the issue of a proposed change in the location of a child’s primary residence that is different from the procedural mechanism set out in Alabama’s Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala.Code 1975. Under Florida law, a custodial parent may not relocate with a child unless (a) there is a written agreement reflecting consent to the relocation by “[t]he parents and every other person entitled to access to or time-sharing with the child,” § 61.13001(2)(a), or (b) the parent proposing to relocate files a petition in court and receives court approval of the relocation. In contrast, under Alabama law, a custodial parent may relocate with a child after providing the notice required by §§ 30-3-163 or 30-3-164 and § 30-3-165, Ala.Code 1975, “unless a person entitled to notice files a proceeding seeking a temporary or permanent order to prevent the change of principal residence of a child within 30 days after receipt of such notice.” § 30-3-169, Ala.Code 1975. See also § 30-3-169,1(a), Ala.Code 1975 (“A person entitled to custody of or visitation with a child may commence a proceeding objecting to a proposed change of the principal residence of a child and seek a temporary or permanent order to prevent the relocation.”). Although the substantive law contained in the Florida and Alabama parental-relocation statutes is similar in many respects, the procedural remedies for enforcing the substantive law are different.
In the present case, the parties stipulated that Florida substantive law applied to the issues before the court. That stipulation is consistent with accepted choice-of-law principles. In Etheredge v. Genie Industries, Inc., 632 So.2d 1324 (Ala.1994), our supreme court stated that “‘a court will apply foreign law only to the extent that it deals with the substance of the case, i.e., affects the outcome of the litigation, but will rely on forum law to deal with the “procedural” aspects of the litigation.’” Id. at 1326 (quoting Eugene F. Scoles & Peter Hay, Conflict of Laws 57 (1992)).
The manner in which litigation concerning a custodial parent’s ability to relocate with a child is brought to court is inherently procedural rather than substantive. See Restatement (Second) of Conflict of Laws § 122:
“A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the *845 local law rules of another state to resolve other issues in the case.
“Comment:
“a. Rationale. Each state has local law rules prescribing the procedure by which controversies are brought into its courts and by which the trial of these controversies is conducted. These rules for conducting lawsuits and administering the courts’ processes vary from state to state. The forum has compelling reasons for applying its own rules to decide such issues even if the case has foreign contacts and even if many issues in the case will be decided by reference to the local law of another state. The forum is more concerned with how its judicial machinery functions and how its court processes are administered than is any other state. Also, in matters of judicial administration, it would often be disruptive or difficult for the forum to apply the local law rules of another state. The difficulties involved in doing so would not be repaid by a furtherance of the values that the application of another state’s local law is designed to promote.
“Parties do not usually give thought to matters of judicial administration before they enter into legal transactions. They do not usually place reliance on the applicability of the rules of a particular state to issues that would arise only if litigation should become necessary. Accordingly, the parties have no expectations as to such eventualities, and there is no danger of unfairly disappointing their hopes by applying the forum’s rules in such matters.”
See also Restatement (Second) of Conflict of Laws § 124 (stating that “[t]he local law of the forum determines the form in which a proceeding may be instituted on a claim involving foreign elements”) and § 127 (stating that “[t]he local law of the forum governs rules of pleading and the conduct of proceedings in court”).
In the present case, Alabama law did not require the mother to file any pleading in court; that burden of responsibility fell on the father, who objected to the proposed relocation. See Ala.Code 1975, §§ 30-3-169 & 30-3-169.1. When, in response to the father’s objection to her proposed relocation, the mother did file a counterpetition seeking to relocate, Alabama law did not require that the counter-petition be verified.
The trial court may have applied the foregoing principles sub silentio because it did not state the basis for its denial of the father’s Rule 52(c), Ala. R. Civ. P., motion asserting that the mother’s counterpetition and amended counterpetition to relocate were insufficient under Florida law on account of their being unverified.[4] Nor did it expressly address the mother’s contention that the father had waived the verification requirement of § 61.13001(3)(a) by failing to raise it, either in a responsive pleading to her counterpetition or at the close of her evidentiary presentation. Instead, the trial court appropriately addressed the issue of the sufficiency of the mother’s notice to the father — that is, the certified letter of February 21, 2011, stating that the mother intended to relocate with the children. The trial court resolved that issue in favor of the mother, holding that the mother had “substantially complied with all notice requirements regarding the proposed relocation of the minor children.” On appeal, the father challenges the sufficiency of the mother’s notice in only one respect: that it was unverified. Alabama law does not require that a notice of intent to relocate be verified. See § 30-3-165.
*846 II.
The father next argues that the trial court failed to consider all the relevant factors set out in § 61.13001(7)(a)-(k), Fla. Stat. Ann., to determine whether a relocation should be permitted. The Florida statute provides:
“(7) No presumption; factors to determine contested relocation. — A presumption in favor of or against a request to relocate with the child does not arise if a parent or other person seeks to relocate and the move will materially affect the current schedule of contact, access, and time-sharing with the nonre-locating parent or other person. In reaching its decision regarding a proposed temporary or permanent relocation, the court shall evaluate all of the following:
“(a) The nature, quality, extent of involvement, and duration of the child’s relationship with the parent or other person proposing to relocate with the child and with the nonrelocat-ing parent, other persons, siblings, half-siblings, and other significant persons in the child’s life.
“(b) The age and developmental stage of the child, the needs of the child, and the likely impact the relocation will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
“(c) The feasibility of preserving the relationship between the nonrelo-cating parent or other person and the child through substitute arrangements that take into consideration the logistics of contact, access, and time-sharing, as well as the financial circumstances of the parties; whether those factors are sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent or other person; and the likelihood of compliance with the substitute arrangements by the relocating parent or other person once he or she is out of the jurisdiction of the court.
“(d) The child’s preference, taking into consideration the age and maturity of the child.
“(e) Whether the relocation will enhance the general quality of life for both the parent or other person seeking the ■ relocation and the child, including, but not limited to, financial or emotional benefits or educational opportunities.
“(f) The reasons each parent or other person is seeking or opposing the relocation.
“(g) The current employment and economic circumstances of each parent or other person and whether the proposed relocation is necessary to improve the economic circumstances of the parent or other person seeking relocation of the child.
“(h) That the relocation is sought in good faith and the extent to which the objecting parent has fulfilled his or her financial obligations to the parent or other person seeking relocation, including child support, spousal support, and marital property and marital debt obligations.
“(i) The career and other opportunities available to the objecting parent or other person if the relocation occurs.
“(j) A history of substance abuse or domestic violence as defined in [§ ] 741.28 or which meets the criteria of [§ ] 39.806(l)(d) by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
*847 “(k) Any other factor affecting the best interest of the child.... ”
The record reflects that the parties submitted evidence concerning most of the Florida statutory factors. There was no direct evidence concerning factor (d), the children’s preference with respect to the proposed relocation. Likewise, there was no evidence indicating that either substance abuse or domestic violence existed, so factor (j) is not applicable. As to factor (h), it was undisputed both that the mother had sought the relocation in good faith and that the father had fulfilled all of his support obligations. With respect to factor (i), the father, who expects to retire from the Marine Corps in two and one-half years, presented no evidence indicating that the relocation would cause him to forgo any career opportunities. The trial court heard extensive, sometimes conflicting, evidence concerning the remaining factors — (a), (b), (c), (e), (f), and (g). On appeal, the father’s argument focuses on factors (c) and (f).
With respect to factor (f) (“The reasons each parent or other person is seeking or opposing the relocation.”), the father contends that his opposition to the relocation is not principally based upon the fact that he and the stepmother had spent their life savings to purchase a $447,000 lake house in anticipation of the children’s remaining in Lauderdale County, as the mother claimed. Rather, he says, his opposition is based upon the fact that the relocation will alter the frequency and quality of the time that he spends with the children. On direct examination by his counsel, the father testified:
“Q. Okay. Mr. Bates, is this whole move a matter of you[r] not wanting to spend the money on visitation?
“A. No. It’s far less about money and more about the time off. It’s a 31-hour drive to Arizona or an all-day flying event, and when I get there, [I would] have to stay in a hotel. I don’t want my kids to remember growing up in a hotel with their father. I would rather them spend time here at the home they know. I can drive [from Albany to Killen] on a Friday night, leave on a Sunday, and still have the weekend and be here within a reasonable time. It’s not so much a matter of money. It’s about the time and quality of visitation.”
Paraphrasing the pertinent portions of factor (c), the father maintains that “[it is not] feasible] [to] presence] the [frequency and quality of the] relationship between [him] ... and the children] through substitute arrangements that take into consideration the logistics of contact, access, and time-sharing.”
In In re B.T.G., 993 So.2d 1140, 1143 (Fla.Dist.Ct.App.2008), a Florida appellate court answered a similar frequency-and-quality-of-time argument. In that case, the mother relocated with the children from Sarasota, Florida, to Seattle, Washington. The trial court ordered the mother to return the children to Sarasota, finding that “any long-distance visitation schedule was ‘hopelessly inadequate’ to preserve the close relationship that existed between the Father and the children.” 993 So.2d at 1142. The Florida appellate court reversed, holding that
“the question of whether substitute visitation arrangements are adequate to foster a continuing meaningful relationship between the child and the nonrelocating parent is ‘not whether the same degree of frequent and continuing contact would be maintained.’ Wilson v. Wilson, 827 So.2d 401, 403 (Fla.[Dist.Ct.App.] 2002) (construing section 61.13(2)(d), the prior version of the current parental relocation *848 statute).[5] Instead, the proper standard for evaluating the proposed substitute visitation is whether the substitute visitation is ‘sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent.’ § 61.13001(7)(c), Fla. Stat. Ann. (2006); see Fredman v. Fredman, 917 So.2d 1038, 1041 (Fla.Dist.Ct.App.2006) (construing section 61.13(2)(d)).”
993 So.2d at 443. The father presented no evidence indicating that he could not afford the travel expenses incident to the relocation. His objection was based on the longer travel time involved (and, thus, the shorter duration of each visit, given the limitations of his work schedule) and the less-than-optimal setting in which visitation would occur. Such alterations in the father’s visitation, however, affect the degree and not the kind of continuing contact that is contemplated by the parties’ shared-parenting agreement. Based on the evidence presented at trial, the trial court could reasonably have concluded that the mother, who had fostered the father’s relationship with the children in the past, would be willing to cooperate with the father to make his future contact with the children convenient and enjoyable for all. The trial court also could reasonably have concluded that the quality of a parent-child relationship is based upon matters other than physical surroundings and that if a meaningful parent-child relationship exists it will continue, irrespective of the setting.
Returning to factor (f), the father insists that the mother’s reason for seeking the relocation was solely financial. Citing Van Asten v. Costa, 874 So.2d 1244 (Fla.Dist.Ct.App.2004), Berrebbi v. Clarke, 870 So.2d 172 (Fla.Dist.Ct.App.2004), and Harris v. Migliore, 789 So.2d 477 (FIa.Dist.Ct.App.2001), he contends that an improvement in the relocating parent’s financial prospects is not sufficient to warrant a relocation. The cases cited by the father stand for the proposition that an improvement in the relocating parent’s financial prospects is not, by itself, sufficient to warrant a relocation when weighed against evidence that the child will suffer from a diminished *849 relationship with the nonrelocating parent. In both Van Asten and Harris, the appellate court affirmed a trial court’s judgment in favor of the nonrelocating parent based on conflicting ore tenus evidence. The Van Asten court concluded that “[relocation cases always involve a considerable exercise of discretion in the weighing and evaluation of the statutory factors. Here, the [trial] court ruling was within the bounds of that discretion, despite the hardship that this may pose to the [mother].” 874 So.2d at 1245.
In Berrebbi, the only case cited by the father that resulted in a reversal of a judgment in favor of the relocating parent, a Florida appellate court concluded that the trial court’s judgment permitting relocation was not supported by substantial evidence. The appellate court explained:
“The Mother’s stated ground for relocation was ‘for purposes of better economic opportunities for herself and her husband.’ The substitute visitation schedule significantly alters the Father’s visitation from three and one-half days of visitation every week to one weekend per month plus spring break, five weeks of summer vacation, Thanksgiving, and half of the Christmas holiday.
“The evidence adduced at the hearing showed that the child was in a good school and doing well, and the trial court found the move would not improve either her school or home life. The evidence further showed that the child’s counselor thought relocation would not be in the child’s best interests. The counselor testified that the child and the Father have a very close relationship and that she was concerned about the impact it would have on the child to be separated from the Father. Additionally, the Mother testified that the child began having problems sleeping when she learned of the possible relocation. There was no evidence presented to counter the counselor’s testimony, nor was there any evidence presented that the relocation would be good for the child. Any evidence regarding the benefits of relocation related to the Mother and her new husband.
“[Former § ] 61.18(2)(d),[6] however, directs the court to consider the best interests of the child, not just the petitioning parent. Because all evidence regarding the impact relocation would have on the child supports a denial of the petition, we cannot say there is substantial competent evidence to support a finding that this move is in the best interests of the child. Accordingly, the trial court abused its discretion in granting the petition for relocation, and we reverse.”
870 So.2d at 173.
Unlike the evidence adduced in Berreb-bi, the testimony of the mother and stepfather, if believed by the trial court, would support a finding that the relocation would be emotionally and educationally beneficial to the children. Aside from the belief that his relationship with the children would be diminished if they moved to Arizona, the father presented no evidence indicating that the relocation would be detrimental to the children. The trial court made no specific findings of fact; accordingly, this court will assume that the trial court “made those findings necessary to support its judgment, unless such findings would be clearly erroneous.” Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). This is a close case, and, depending upon its credibility determinations, the trial court reasonably could have ruled in favor of either party.
*850 “ ‘It was within the province of the trial court to consider the credibility of the witnesses, to draw reasonable inferences from their testimony and from the documentary evidence introduced at trial, and to assign such weight to various aspects of the evidence as it reasonably may have deemed appropriate.... In order to reverse the trial court ..., we would have to make our own credibility determinations and we would have to reweigh the evidence, neither of which we are allowed to do.’ ”
Vestlake Cmtys. Prop. Owners’ Ass’n v. Moon, 86 So.3d 359, 367 (Ala.Civ.App.2011) (quoting Miller v. Associated Gulf Land Corp., 941 So.2d 982, 990 (Ala.Civ.App.2005)).
Based on the foregoing, we conclude that the judgment of the Lauderdale Circuit Court is due to be affirmed.
AFFIRMED.
THOMAS and MOORE, JJ., concur.
THOMPSON, P.J., concurs specially.
BRYAN, J., concurs in the result, without writing.

. Florence, Killen, and Rogersville (referenced infra) are cities in Lauderdale County. Florence and Killen are less than 10 miles apart; Rogersville is 15 miles from Killen and 24 miles from Florence.

. Because this action was tried before the court without a jury, the motion is properly considered one for a judgment on partial findings, pursuant to Rule 52(c), Ala. R. Civ. P. *841 See Loggins v. Robinson, 738 So.2d 1268 (Ala.Civ.App.1999).

. As discussed infra, the substantive law of Florida applies in this case. Moreover, the parties agree that the substantive law of Florida, specifically § 61.13001, Fla. Stat. Ann., the Florida parental-relocation statute, applies in this case. In their briefs, the parties have cited and quoted the current version of § 61.13001, which became effective on October 1, 2009, and which specifically provides in § 61.13001(1 l)(a)l. that "[t]his section ... applies [t]o orders entered before October 1, 2009, if the existing order defining custody, primary residence, the parenting plan, time-sharing, or access to or with the child does not expressly govern the relocation of the child.” See A.F. v. R.P.B., 100 So.3d 71 (Fla.Dist.Ct.App.2011) (holding that current version of § 61.13001 applied in action initiated by petition regarding relocation filed on November 10, 2009). See also note 5, infra.

. See note 2, supra.

.] The original parental-relocation statute adopted in Florida was formerly found at § 61.13(2)(d), Fla. Stat. Ann. It required consideration of the following factors:
" 1. Whether the move would be likely to improve the general quality of life for both the residential parent and the child.
“2. The extent to which visitation rights have been allowed and exercised.
"3. Whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
“4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent.
"5. Whether the cost of transportation is financially affordable by one or both parties.
"6. Whether the move is in the best interests of the child.”
‘‘The [Florida] legislature significantly amended the parental relocation statute and moved it to section 61.13001, effective October 1, 2006.” Fredman v. Fredman 960 So.2d 52, 53 n. 1 (Fla.Dist.Ct.App.2007). The 2006 version of the statute applied "[t]o orders entered before October 1, 2006, if the existing order defining custody, primary residence, the parenting plan, time-sharing, or access to or with the child does not expressly govern the relocation of the child.” See § 61.13001(1 l)(a)(l), Fla. Stat. Ann. (2006). See also Muller v. Muller, 964 So.2d 732, 733 n. 1 (Fla.Dist.Ct.App.2007) ("The trial judge properly applied the 2006 version of the relocation statute as section 11(a) mandates that this version apply ‘[t]o orders entered before October 1, 2006, if the existing order defining custody, primary residence, or visitation of or with the child does not expressly govern relocation of the child.' ”). Section 61.13001 has been amended several times since its enactment in 2006. The current version applies "[t]o orders entered before October 1, 2009...." See note 3, supra.

.] See note 5, supra.